36

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION
‎-----------------------------

United States District Court
Southern District of Texas
FILED

JUL 0 8 1996

Michael N. Milby, Clerk

| | | |
|---|---|---|
| FRANCISCO R. RODRIGUEZ | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | **CIVIL ACTION NO. B-95-150** |
| | § | |
| | § | |
| UNITED STATES POSTAL SERVICE: | § | |
| MARVIN T. RUNYON, Individually | § | |
| And As Postmaster General, UNITED | § | |
| STATES POSTAL SERVICE; MARY MARTINEZ, | § | |
| Individually And As Postmaster, | § | |
| UNITED STATES POSTAL SERVICE; | § | |
| ROMEO ROCHA, Individually And As Super- | § | |
| intendent Of Postal Operations, | § | |
| UNITED STATES POSTAL SERVICE; ROBERTO | § | |
| PANTOJA, Individually And As Superin- | § | |
| tendent Of Postal Operations, UNITED | § | |
| STATES POSTAL SERVICE; GILBERT G. | § | |
| GALVAN, Individually And As Supervisor, | § | |
| UNITED STATES POSTAL SERVICE; ARTURO | § | |
| J. CORTEZ, Individually And As Acting | § | |
| Superintendent Of Postal Operations, | § | |
| UNITED STATES POSTAL SERVICE; EDDIE M. | § | |
| PEREZ, Individually And As Part-time | § | |
| Flexible Clerk, UNITED STATES POSTAL | § | |
| SERVICE; LOUIS BAZALDUA, Individually | § | |
| And As Labor Relations Specialist, | § | |
| UNITED STATES POSTAL SERVICE; MANUEL | § | |
| D. HERNANDEZ, Individually And As MSC | § | |
| Director Human Resources, UNITED | § | |
| STATES POSTAL SERVICE; FELIX R. | § | |
| FIGUEROA, Individually And As Postal | § | |
| Inspector, UNITED STATES POSTAL | § | |
| SERVICE; GEORGE LOPEZ, Individually And | § | |
| As MSC Manager/Postmaster, UNITED | § | |
| STATES POSTAL SERVICE, | § | |
| Defendants. | § | |

‎-------------------------------------------------------------------

PLAINTIFF'S THIRD AMENDMENT TO ORIGINAL PETITION

**PLAINTIFF'S THIRD AMENDMENT TO ORIGINAL PETITION AND PLEADINGS**

PLAINTIFF'S THIRD AMENDMENT TO ORIGINAL PETITION  Page 1.

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW FRANCISCO R. RODRIGUEZ, Plaintiff, complaining of, and brings this action against the DEFENDANTS in the above styled and numbered cause. Defendants herein, and each of them, have been duly served with process. Jurisdicticon is conferred under Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), 42 U.S.C. § 2000e-16 for reprisal and sex discrimination, Age Discrimination in Employment Act (hereinafter "ADEA"), 29 U.S.C. § 633a, for age discrimination, and 18 U.S.C. § 1709, for mail theft as well. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 for compensatory, declaratory, injunctive relief, as well as costs, including reasonable attorney's fees and in support of the Complaint, Plaintiff would show the Court as follows:

## I.

Plaintiff claims that Defendants deprived him of his rights, privileges and immunities guaranteed by the Fourteenth Amendment of the United States Constitution in that Plaintiff was wrongfully terminated from his employment as a Level 5/6 Distribution/window and Vehicle Operations Maintenance Assistant (hereinafter "VOMA") clerk, deprived him of back pay entitlements and his mail was detained and tampered with, because of his sex, age and protected activities. At all times relevant hereto Defendants have continually refused to comply with mail and back pay claims.

## II.

Plaintiff was employed by the U.S. Postal Service in April of 1966 and remained so employed without incident until March 20, 1992, when he was constructively discharged. As a result of a July 9, 1992 step 3D grievance-arbitration settlement, Plaintiff was returned to duty with a full back pay decision.

PLAINTIFF'S THIRD AMENDMENT TO ORIGINAL PETITION- Page 2.

Upon Plaintiff's return to duty, and at all times relevant hereto, Defendants MARTINEZ, GALVAN and PANTOJA continued the same pattern of abuse, harassment and intimidation by denying him his incumbent Level 5/6 Distribution/window and VOMA clerk assignment, level-6 pay, overtime and assigned him menial duties. Subsequently, for fear of further retaliation impairing the enjoyment of his job and risking a more successful "frame-up", Plaintiff retired from the Postal Service on October 2, 1992. During Plaintiff's postal service employment Plaintiff was a member of the American Postal Workers Union, AFL-CIO (hereinafter "Union"), recognized as the exclusive bargaining representative with the United States Postal Service (hereinafter "Employer"), hereinafter the ("parties"). Plaintiff became an officer and president of the local union for well over 24 years during and after his retirement. As such, Plaintiff's duty and responsibility as president of the local union, was to police and enforce the parties employment agreement.

<u>III.</u>

Plaintiff would show that in 1974, Defendant MARTINEZ was unilaterally assigned to the Harlingen, Texas post office and given a preferred duty assignment. Plaintiff would show that Defendant MARTINEZ's assignment to the Harlingen, Texas bargaining unit, raised a potential violation of parties employment contract. Plaintiff filed a grievance and as a result of, and part of the grievance settlement and after Defendant MARTINEZ had been on the duty assignment several months, was returned to the Weslaco, Texas post office from where she had been assigned.

<u>PLAINTIFF'S THIRD AMENDMENT TO ORIGINAL PETITION- Page 3.</u>

## IV.

Plaintiff would show that on or about the latter part of 1987, Defendant MARTINEZ was appointed postmaster of the Harlingen, Texas post office and shortly thereafter selected Defendant ROCHA as Superintendent of Postal Operations (hereinafter "SOPO"), second in command. Plaintiff would show that shortly after becoming managers of the Harlingen, Texas post office, Defendants MARTINEZ, ROCHA and thereafter Defendant Galvan began a course of conduct that included harassment, intimidation and gross employment policy and contract violations, targeting Plaintiff, his assigned duties and the parties employment agreement, in hopes that Plaintiff would quit his job with the Postal Service.

## V.

Plaintiff would show that on March 22, 1988, Plaintiff initiated an investigation into the potential unilateral assignment of a former postmaster into the Harlingen, Texas post office bargaining unit. Plaintiff would show that Defendants MARTINEZ, ROCHA and HERNANDEZ engaged in a course of conduct that included untruths and denial of documents in efforts to retain the former postmaster. Thereafter, Plaintiff would show that he filed a grievance and an Unfair Labor Practice charge against the Defendants that resulted in the re-assignment of the former postmaster out of the Harlingen, Texas post office. Thereafter, Plaintiff would show that on April 15, 1988, in apparent retaliation and intimidation, Defendant ROCHA assigned him a demeaning and oppressive work schedule.

PLAINTIFF'S THIRD AMENDMENT TO ORIGINAL PETITION Page- 4.

## VI.

Plaintiff would show that on April 28, 1988, an arbitration hearing was held in the Harlingen, Texas post office with Defendant HERNANDEZ as the employer representative. The hearing was the result of a grievance filed by Plaintiff on behalf of a window clerk's $1,173.13 flexible credit shortage, and the decision absolved the clerk's shortage. Thereafter, Plaintiff would show that Defendants MARTINEZ and ROCHA, by letter dated April 29, 1988, in apparent retaliation, issued him a fabricated letter of warning, allegedly with failure to follow instructions and direct orders, which he denies.

## VII.

Plaintiff would show that on November 9, 1988, discussions were held with Defendant HERNANDEZ, regarding two window clerk flexible credit shortage grievances filed by Plaintiff, and the settlement relieved the clerks of $96.74 and $144.11 shortages, respectively. Thereafter Plaintiff would show that he filed an Unfair Labor Practice charge against Defendants for potential unilateral changes made by Defendant MARTINEZ on a Pool Relief clerk duty assignment. Plaintiff would show that by letter dated December 23, 1988, Plaintiff was the winner of two cruise ship trip certificates, sponsored by the employee welfare committee. Thereafter, Plaintiff would show that Defendants MARTINEZ and ROCHA in apparent retaliation withheld the certificates from Plaintiff. Thereafter, by letter dated April 10, 1989, Defendant MARTINEZ threatened Plaintiff with forfeiture of the certificates. Plaintiff would show that Defendant MARTINEZ continuously harassed Plaintiff over the certificates. Plaintiff would show that he complained to J.G. Schraer, then Field Division General Manager/Postmaster (hereinafter "FDGM/P"), in San Antonio, Texas.

PLAINTIFF'S THIRD AMENDMENT TO ORIGINAL PETITION Page- 5.

Plaintiff would show that apparently telephone calls were made, and by letter dated March 17, 1989, from FDGM/P Schraer to Plaintiff, potential distorted truths were told by Defendants MARTINEZ and ROCHA.  Finally by letter dated June 12, 1989, Defendant MARTINEZ released the certificates to Plaintiff. Plaintiff would show that he filed an Equal Employment Opportunity (hereinafter "EEO") complaint dated June 12, 1989, regarding the disparate treatment received on the cruise trip certificates.  Thereafter, Plaintiff would show that by letter dated July 17, 1989, Plaintiff received an answer from the EEO Complaints Processing in San Antonio, Texas with a corrective action taken settlement.

VIII.

Plaintiff would show that, at all times relevant hereto, Plaintiff was the eldest of the employees at the Harlingen, Texas post office.  Plaintiff would show that from time to time, and at all times relevant hereto, Defendants ROCHA, GALVAN and CORTEZ would assign Plaintiff to menial duties abandoning his regularly bid assigned duties setting Plaintiff up for potential discipline for delay of mail and dereliction of duties.  Plaintiff would further show that, at all times relevant hereto, Defendants MARTINEZ, ROCHA, GALVAN, CORTEZ and PANTOJA would deny Plaintiff necessary overtime to accomplish his bid assignment duties.  Plaintiff would further show that Defendants MARTINEZ, ROCHA, GALVAN, CORTEZ and PANTOJA would detail other employees to perform Plaintiff bid assigned duties and work other employees on overtime discriminately.  Plaintiff would further show that Defendants would dissimulate serious postal laws and regulations violations committed by other employees.

PLAINTIFF'S THIRD AMENDMENT TO ORIGINAL PETITION- Page 6.

IX.

Plaintiff would show monetary settlement awards for grievances and (CA-2) Workers' Compensation claim filed by Plaintiff and the apparent retaliatory actions by DEFENDANTS:

1. March 20, and 21 of 1990, Defendants MARTINEZ, ROCHA, GALVAN and Daniel Ramon, then supervisor of mails and collection, consisting of the entire Harligen, TX management staff, engaged in the performance of bargaining unit work. Thereafter, a class-action grievance awarded 24 hours of overtime (hereinafter O.T.) to clerks on the overtime desired list (hereinafter "ODL"), (estimated $532.00).

2. Thereafter, on May 19, 1990, Defendant MARTINEZ detailed two acting supervisors to perform bargaining unit work. Two more grievances filed awarded two hours O.T. to clerks on ODL (estimated $50.00).

3. On June 20, 1991, a pre-arbitration discussion was held with Defendant BAZALDUA, on two class-action grievances and a settlement awarded 8 hours O.T. to clerks on ODL (estimated $190.00).

4. On July 19, 1991, a Step 3, decision awarded custodian 8 hours O.T. (estimated $150.00).

5. On October 1, 1991, a pre-arbitration discussion and settlement awarded 2 custodians 80 hours straight time each (estimated $3,000.00).

6. On October 1, 1991, a pre-arbitration discussion with Defendant BAZALDUA and settlement awarded window clerk $2,507.63.

7. On February 19, 1992, step 1 grievance settlement awarded local union $325.95 unjustified grievance fees.

PLAINTIFF'S THIRD AMENDMENT TO ORIGINAL PETITION Page- 7.

Plaintiff would show that between March 20, 1990 and May 19, 1990, an estimated $582.00 grievance settlements were paid. Between Jun 20, 1991 and October 1, 1991, an estimated $5,800.00 grievance settlements were paid by the Defendant U.S. POSTAL SERVICE as a result of Plaintiff's enforcement of the parties employment agreement. Plaintiff would further show that by October 30, 1991, Local Memorandum of Understanding (hereinafter "LMOU") was accomplished between Plaintiff, local union chief spokesperson and Defendant MARTINEZ, employer spokesperson. Plaintiff would further show that, at all times relevant hereto, Defendant MARTINEZ has refused to reduce the LMOU to writing. Plaintiff would also show that on August 25, 1992, he filed an Unfair Labor Practice charge against the Defendants for refusing to bargain collectively with the union. Plaintiff would show that this activity accelerated Defendants constructive discharge against Plaintiff. Plaintiff would show that on November 26, 1991, Plaintiff filed a (CA-2) Workers' Compensation claim. Thereafter, Plaintiff would show that in apparent retaliation, on December 12, 1991, Defendant CORTEZ issued Plaintiff 7-day suspension letter dated December 11, 1991, author by Defendant ROCHA, allegedly for failure to follow instructions and being argumentative with a supervisor, which he denies. Plaintiff would show that Defendants ROCHA and CORTEZ cited a three year old letter of warning, on the 7-day suspension, as an element of past adverse record in violation of Plaintiff's employment agreement. Plaintiff would further show that Defendants MARTINEZ, ROCHA, HERNANDEZ and CORTEZ time after time would delay and refuse to adjudicate the 7-day suspension.

PLAINTIFF'S THIRD AMENDMENT TO ORIGINAL PETITION Page- 8.

## X.

On information and belief, on or about January, 1992, Defendant NARTINEZ instructed timekeepers of the Harlingen, Texas to delete VOMA level-6 pay from Plaintiff's Electronic Time Card (hereinafter "ETC").   Thereafter, by letter dated February 25, 1992, Defendant CORTEZ, instructed Plaintiff not to perform his VOMA Level-6 duties anymore.   By letter of same date Defendant CORTEZ, assigned the VOMA duties to Gustavo Barrera, Window Services Technician clerk.   Thereafter, on information and belief, Defendant MARTINEZ requested Joe Holman, VOMA clerk from the Brownsville, Texas post office to train clerk Barrera and casual employee Javier Oliva on the VOMA duties.

## XI.

Plaintiff would show that, on March 20, 1992, he was asked by Defendant GALVAN to go to the office, and take a witness with him, where he was then given an emergency suspension letter.   No reason for the suspension was given, though Plaintiff requested a reason. Subsequently, Defendant FIGUEROA escorted Plaintiff, from the office and off the premises through the workroom floor, in presence and full view of his co-workers and peers, humiliating and embarrassing Plaintiff.

## XII.

Thereafter, Plaintiff would show that on or about March 25, 1992, Defendant MARTINEZ mailed Plaintiff a restricted delivery registered letter. Plaintiff would further show that on March 26 and 27, 1992, two different letter carriers made two unsuccessful attempts to deliver the letter, and with specific instructions from Defendant MARTINEZ to deliver the letter, and if unable to do so, to return it to the post office but not to leave attempted delivery notices.

PLAINTIFF'S THIRD AMENDMENT TO ORIGINAL PETITION- Page 9.

Plaintiff had reason to believe and would show that on or about March 31, 1992, Defendants MARTINEZ and CORTEZ retrieved the letter from the mail stream, opened it, extracted it's contents, defaced the letter and did not keep records of it. Plaintiff would show that Defendants HERNANDEZ and BAZALDUA would distance themselves and cover-up Defendant MARTINEZ'S failure to properly keep records of the letter, which Plaintiff has reason to believe contained an original letter of proposed removal. Plaintiff would show by letter dated April 16, 1992, that Defendants MARTINEZ and CORTEZ denied him his registered letter.

XIII.

Plaintiff would show that on April 7, 1992, Defendant PEREZ issued a sworn statement, unfriendly and damaging to Plaintiff. Thereafter, Plaintiff would show that Defendant CORTEZ issued him a letter of proposed removal dated April 10, 1992, allegedly for making statements of a threatening nature with implications of violence, which he denies. Plaintiff would further show that the letter of proposed removal dated April 10, 1992, was fashioned by citing the un-adjudicated 7-day suspension as an element of past adverse record and Defendant PEREZ'S sworn statement. Plaintiff would show that Defendant PEREZ would have great benefits by making such statement.

XIV.

By letter dated May 11, 1992, Plaintiff would show, that due to distorted facts and potential mail violations, he filed a formal complaint with J. M. Kelly, Regional Chief Postal Inspector in Memphis, TN. Apparent telephone calls were made and Plaintiff's complaint was disregarded and considered a service issue.

<u>PLAINTIFF'S THIRD AMENDMENT TO ORIGINAL PETITION Page- 10.</u>

Plaintiff would show that by letter dated July 20, 1992, he contacted the Defendant's Chief Postal Inspector in Washington, DC, and expressed dissatisfaction with the handling of the complaint by the Defendant's Regional Chief Postal inspector. Plaintiff would show that after several communications with the Chief Postal inspector, Plaintiff received a letter dated January 27, 1994, stating that the registered letter contained a back pay check, though the back pay was mailed September 23, 1992.. The letter further stated that Plaintiff and his wife had refused it on two separate occasions, then it was remailed via First class mail. The investigation by the Defendant's Regional and Chief Postal inspectors consisted of nothing more than the making of a few telephone calls.

## XV.

Plaintiff would show that by letters dated july 23, 1992, he contacted several members of congress, some are personal family friends, regarding with specificity, the registered letter at issue. Plaintiff would show that the mail responses by the Defendants to my congressional representative was evasive, false and damaging to Plaintiff's reputation. Plaintiff would show that the responses by Defendants to my elected officials were also as a result of potential telephone calls made.

PLAINTIFF'S THIRD AMENDMENT TO ORIGINAL PETITION Page- 11.

XVI.

Plaintiff would show that as the result of a step 3D grievance-arbitration settlement dated July 9, 1992, he was returned to duty with a full back pay decision. Plaintiff would show that the proceeds for his back pay award dated September 17, 1992, were derived from his annual leave. Plaintiff would show that Defendants, at all times relevant hereto, have continually denied his registered letter and full back pay claims, though Defendants have been paying him piece-meal, and virtually on the payroll part time; (1) by 40 hours annual leave adjustment dated July 2, 1993; (2) 40 hours annual leave adjustment dated September 2, 1994; and (3) 40 hours administrative leave adjustment dated March 3, 1995. Plaintiff would show that an estimated $9,900.00 for overtime and higher level pay remains outstanding.

XVII.

Plaintiff would show that he filed an EEO complaint dated August 15, 1992, alleging age, sex and reprisal discrimination. Plaintiff would further show that no affidavits were obtained in the process of his complaint investigation. Plaintiff would show that by letter dated October 5, 1992, he appealed his complaint to the Office of Federal Operations, Washington, D.C. Plaintiff would further show that the Equal Employment Opportunity Commission (hereinafter "EEOC"), on December 22, 1992, affirmed the Defendants decision to reject Plaintiff's complaint. Plaintiff would further show that the EEOC failed to properly notify him of Defendants decision and the EEOC's determination of his complaint.

PLAINTIFF'S THIRD AMENDMENT TO ORIGINAL PETITION Page- 12.

Plaintiff would show by letter dated October 19, 1994, from Otis Maclin, Jr., Acting EEO Compliance and Appeals Coordinator, Plaintiff was informed Compliant No. 3-U-1376-92 (Re: case at bar) was with appropriate appeal rights and would be inappropriate to intervene at that time. Plaintiff would further show that by letter dated March 20, 1995, Plaintiff's request for reconsideration was docketed and assigned Docket # 05950420 - 01930110. Thereafter, on May 5, 1995, Plaintiff appealed Defendant's denial for reconsideration. Thereafter, on August 2, 1995, Plaintiff via telephone, contacted Loretta Y. Watson, Chief Intake and Control Branch, Compliance and Control Division, EEOC, Washington, DC, and expressed his concerns and inquired on the progress and status of his EEO complaint. Chief Watson informed Plaintiff that the time limitations of his complaint were still in place, but did not know when it would come up because of tremendous case backlog. Thereafter, because of the delay experienced on his complaint through no fault of his and for fear of time limits expiring, Plaintiff filed the instant action as per letter from EEOC dated March 20, 1995.

XVIII.

Plaintiff would show that upon his return to duty Defendants MARTINEZ, GALVAN and PANTOJA have intimidated and humiliated him by relieving him of all preferred and bid assignment duties denying him employment contract rights. Plaintiff would show that on August 25, 1992, he filed an Unfair Labor Practice charge against Defendants and at all times thereafter have refused to bargain collectively by refusing to reduce the LMOU to writing.

PLAINTIFF'S THIRD AMENDMENT TO ORIGINAL PETITION Page- 13.

## XIX.

## FIRST CAUSE OF ACTION—WRONGFUL DISCHARGE

Plaintiff was employed by the United States Postal Service in April of 1966, and remained so employed without incident until March 20, 1992, when he was constructively discharged. Shortly thereafter, as the result of a July 9, 1992 step 3D grievance-arbitration settlement, Plaintiff was returned to duty with a full back pay decision. Subsequently thereafter, for fear of further retaliation and impairing his health and the enjoyment of his job, he retired in October 2, 1992.

Plaintiff would show that, by placing him on emergency suspension and then wrongfully terminating him Defendants caused harm to his reputation. Moreover, Defendants' representatives made continuing statements to Plaintiffs' representatives to the effect that he was given a 7-day suspension for failure to follow instructions of a supervisor and being argumentative with a supervisor and was charged with making statements of a threatening nature with implications of violence. Such statements were untrue and Defendants knew they were untrue but nevertheless they elected to recklessly and maliciously represent them as true.

Plaintiff would show that he was falsely accused of failure to follow instructions and being argumentative with a supervisor and making threatening statements of a threatening nature with implications of violence which were untrue and Defendants knew they were untrue.

Plaintiff denies the charges and alleges that the fact that the cause of the wrongful termination is in fact because he had file a (CA-2) Workers' Compensation claim which he did in good faith.

PLAINTIFF'S THIRD AMENDMENT TO ORIGINAL PETITION Page- 14.

By terminating Plaintiff because he filed a Ca-2 Workers' Compensation claim was in violation of Fourteenth Amendment of the United States Constitution which Plaintiff has redress under 42 U.S.C. § 1983 including compensatory damages against the Defendants for lost wages in the past and future, damages for emotional distress  and anxiety and loss to reputation, punitive damages against Defendants RUNYON, MARTINEZ, ROCHA, CORTEZ, GALVAN, PANTOJA, HERNANDEZ, BAZALDUA, FIGUEROA, LOPEZ and PEREZ and which entitles Plaintiff reasonable attorney's fees incurred  and  to be incurred in the preparation and trial of this cause, together with additional sum in the event of a successful appeal to the Fifth Circuit of Appeals and an additional sum in the event of a successful appeal to the United States Supreme Court.

XX.

SECOND CAUSE OF ACTION—EMOTIONAL DISTRESS AND ANXIETY

As a direct and proximate result of his termination for filing a CA-2 Workers' Compensation claim and for his protected activity  has suffered economic loss, emotional distress and anxiety.

Defendants  MARTINEZ, ROCHA, GALVAN, CORTEZ, PANTOJA, HERNANDEZ, BAZALDUA, CORTEZ and PEREZ knew that Plaintiff was relying on his employment and intentionally and willfully subjected Plaintiff to demeaning assignments with the United States postal Service.  Defendants subjected Plaintiff to statements and allegations which were intentionally planned to inflict emotional distress.  Defendants knew that Plaintiff had college age children and Plaintiff's employment was  their main source of support.  Defendants maliciously and willfully attempted to intimidate and humiliate Plaintiff in efforts to force him to quit.

<u>PLAINTIFF</u>'S <u>T</u>HIRD AMENDMENT TO ORIGINAL PETITION Page- 15.

Defendants knew that Plaintiff could not continue to work under the adverse working environment subjected to Plaintiff by Defendants. Nevertheless, at all times material hereto, and doing all the things as alleged throughout this Petition, Defendants, and each of them, intentionally and willfully acted maliciously toward Plaintiff with the intention of inflicting severe emotional distress upon Plaintiff. Such actions have been the direct and proximate cause of severe emotional distress suffered by Plaintiff.

Plaintiff would further show that the conduct of the Defendants described hereinabove, was done willfully or with conscious indifference towards the constitutional rights of Plaintiff. As such, Plaintiff is entitled to recover exemplary damages to deter such Defendants from engaging in such wrongful, willful, malicious and unconscionable conduct, and it would also serve as a warning to deter others similarly situated.

<u>XXI.</u>

### <u>THIRD CAUSE OF ACTION  DEFAMATION OF CHARACTER</u>

Defendants MARTINEZ, ROCHA, PANTOJA, GALVAN, CORTEZ, HERNANDEZ, BAZALDUA, FIGUEROA AND PEREZ were, at all times herein, employees of the Defendant U.S. POSTAL SERVICE and Plaintiff was also an employee of the same employer under the supervision of each or all of the Defendants. Plaintiff was employed by the Defendant U.S. POSTAL SERVICE since April of 1966 as clerk and had been so employed until March 20, 1992, when he was falsely accused of failure to follow instructions and being argumentative with a supervisor and making statements of a threatening nature with implications of violence and constructively discharged.

<u>PLAINTIFF'S THIRD AMENDMENT TO ORIGINAL PETITION Page- 16.</u>

Shortly, thereafter he was returned to duty with full back pay. Subsequently, he retired on October 2, 1992.

On March 20, 1992, he was escorted off the employers premises by Defendant FIGUEROA, in the presence and full view of his peers and co-workers, which placed Plaintiff in bad light to all other employees.

Representatives of Defendants herein made false, derrogatory, defamatory statements, on information furnished by Defendants, relating to accusations that Plaintiff had made statements of a threatening nature with implications of violence. Defendants acted without any consideration to Plaintiff's standing in the community and among his fellow employees which made him appear he had failed at his job, when in fact Defendants were reacting to Plaintiff's filing of CA-2 Workers' Compensation claim and protected activity.

## XXII

### FOURTH CAUSE OF ACTION   INTERFERENCE WITH PROTECTED PROPERTY INTERESTS

Defendants, and each of them, knew that Plaintiff had protected property interests in such amounts establishing a fiduciary duty upon Defendants. At all times material hereto, and in doing the things alleged herein, Defendants knew that Plaintiff was relying on his compensation from his employment with Defendants.

At all times herein Defendants MARTINEZ, ROCHA, CORTEZ, GALVAN, PANTOJA, HERNANDEZ, BAZALDUA, FIGUEROA and PEREZ were acting within the course and scope of their authority as employees and agents of the Defendant U.S. POSTAL SERVICE. Defendant MARTINEZ had the authority to hire and fire employees of Defendant U.S. POSTAL SERVICE Harlingen, Texas facility, including the Plaintiff.

PLAINTIFF'S THIRD AMENDMENT TO ORIGINAL PETITION Page- 17.

Defendants MARTINEZ, ROCHA, GALVAN, CORTEZ, PANTOJA, CORTEZ, FIGUEROA,HERNANDEZ, BAZALDUA, and PEREZ have conspired against Plaintiff by acting in concert to deprive him of his rights under the United States Constitution as set forth above which conspiracy is actionable under 42 U.S.C. § 1983.

### PRAYER

**WHEREFORE, PREMISES CONSIDERED** Plaintiff prays that upon trial of this cause judgement be entered in Plaintiff's behalf awarding him:

1. Compensatory damages for his loss of wages and constructive retirement compensation and damages for emotional distress and anxiety caused by his wrongful termination and for damage to his reputation and associations together with pre and post judgement interest;

2. Award Plaintiff punitive damages against the DEFENDANTS in an amount of 100,000.00 each for their violations of Plaintiff's rights under the United Stqtes Constitution;

3. Award Plaintiff an amount of $10,000,000.00 for exemplary damages an amount in excess of the minimum jurisdictional limits of the Court.;

4. Award Plaintiff reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1983.;

5. Award Plaintiff such other and further relief as this Court may deem proper.

Respectfully submitted,

FRANCISCO R. RODRIGUEZ
Pro Se
719 Citrus Terrace
Harlingen, Texas 78550
(210) 23-8632

PLAINTIFF'S THIRD AMENDMENT TO ORIGINAL PETITION Page- 18.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Third

Amendment to Original Petition was mailed via certified mail to

the following:

### CERTIFIED MAIL—RETURN RECEIPT
### REQUESTED Z 703 019 411

NANCY L. MASSO
Assistant United States Attorney
Southern District of Texas
P.O. Box 1671
Brownsville, Texas 78522


on this the  8th  day of  July , 1996.

FRANCISCO R. RODRIGUEZ
Pro Se
719 Citrus Terrace
Harlingen, Texas 78550
(210) 423-8632