59

United States District Court
Southern District of Texas
FILED

JUN 1 1 1997

Michael N. Milby, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

FRANCISCO R. RODRIGUEZ,            )
                 Plaintiff          )
                                    )      Cause No. B-95-150
VS.                                 )      Civil
                                    )
UNITED STATES POSTAL SERVICE-ET AL,)
                 Defendants)

PLAINTIFF'S SUPPLEMENTAL RESPONSE TO DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT AND FOR DISMISSAL

TO THE HONORABLE MAGISTRATE JUDGE JOHN W. BLACK:

COMES NOW FRANCISCO R. RODRIGUEZ, plaintiff in the above referenced cause and for his supplement to his response to defendants' motions for summary judgment and for dismissal, and in support therefor, would respectfully show the Court as follows:

(NOTE: Plaintiff by way of explanation, would show that each of the subsequent items are related to the first item, retaliation, which was the motivating factor by defendants in all of the various offenses and misconduct they committed.)

I. - RETALIATION

A.  ALLEGED FACTS.

Plaintiff would show that early-on plaintiff complained to management about the manner in which Defendant Mary Martinez had transferred into the Harlingen post office, and she was transferred back to her old post office, sometime in 1987 Martinez became postmaster of the Harlingen post office in 1987 and she selected Romeo Rocha as Superintendent of Postal Operations, a former Harlingen post office supervisor.

In the eve and approaching local memorandum of understanding negotiations in October of 1987, Plaintiff noticed a

- 1 -

authoritarian management style very distinct from her predecessors.  The LMOU negotiations consisted of her and Defendant Rocha as the only negotiating team.  Plaintiff would show that the defendants began by making unilateral National Agreement and LMOU changes, including gains made by Plaintiff and his staff of negotiators through negotiations with former postmasters since the collective bargaining agreements were implemented by the Reorganization Act of 1970.  Plaintiff would further show that Defendant Martinez has refused to reduce to writing the 1990-1994 LMOU, and last one negotiated by the Plaintiff with Defendant Martinez before Plaintiff retired in 1992.  See additional facts and allegations below.

### B.   ARGUMENTS AND AUTHORITIES.

1.  Plaintiff would show a pattern of retaliatory responses for his union activities by Defendant Martinez and her staff shortly after she became the postmaster of the Harlingen Post Office.  Constant efforts were made by purposely and intentionally assigning him duties outside his regular duty assignment, depriving and restricting him of necessary work hours including overtime to accomplish his assigned duties and creating an appearance of dereliction of duties.

Plaintiff would show that though his attendance was beyond reproach, Defendants would systematically and falsely accuse him and "set-him-up" with potential mail violations that would result in potential disciplinary action, including removal from the Postal Service, all in retaliation for union activities/exercising his rights under the National Agreement.

Plaintiff would show that Defendant Martinez would

- 2 -

absent herself and rely on flawed arbitration awards and
upper management officials to cover-up for her actions
against innocent employees.  Plaintiff would still further
show that any bargaining unit employees and supervisors not
meeting the management style of Defendant Martinez would be
punished by being demoted, removed or transferred.

2.  Plaintiff claims that all of his problems with Postal
Service defendants has been due to or an outgrowth of retali-
ation springing from the initial events and further escalated
by the Harlingen postmaster and persons acting in concert
with her.  Plaintiff further argues that the number of high
level officials and management of Harlingen Post Office, and
the continuing nature of the harassment/retaliation, plus the
double retaliation against plaintiff individually and as the
A.P.W.U. representative of his union, makes the retaliation
extremely troublesome in its reprehensibility.  The extreme
degree and nature of this retaliation has never been address-
ed by defendants, in their attempts to prevent plaintiff from
showing the depredations of the "moral cancer" pervading the
Harlingen Post Office, by having his day in Court.  Plaintiff
would point out that the number of occurrences where the USPS
was using its own business ("we deliver for you") as a weapon
against plaintiff, by misdelivering and stealing plaintiff's
mail, so that plaintiff recently was compelled to request the
Court to order defendants to deliver plaintiff's' service
copies by another means than the U. S. Postal Service. Plain-
tiff notes no response by defendants to this request by the
plaintiff.

CVAPDF - www.fesco.com

Specific instances would include, but not be limited to, because of the great plethora of such instances, some of the following, harassment/retaliation acts:

a. When plaintiff complained to postmaster that he was being given extra menial duties, outside his job description, and contradictory instructions from management on February 12 1991 (Px-70A); postmaster retaliated by naming Romeo Rocha, S.P.O., as immediate supervisor of all window clerks, and also about the same time, systematically discriminated a-gainst plaintiff in not scheduling plaintiff for overtime, despite his willingness to work and request for overtime (see Px-70C) and plaintiff being the third most senior window clerk (also note that plaintiff was singled out as the only window clerk to be paid any uniform allowance).

b. On April 26, 1991, plaintiff sent a letter to the postmaster complaining of interference with union personnel, and increased hostility by management against said personnel; management shortly thereafter initiated a sign out and in log and coffee break reduction.

c. Plaintiff refers to Px-71C regarding the Eddie Perez packet, which showed a USPS employee distorting the problem with grievances and making statements about plaintiff and al-leged threats, that were not true, having become allied with defendants and antagonistic to plaintiff acting in his APWU capacity. Plaintiff complains about the incident being a re-taliation for his activity on union grievance matters, being instigated and promoted by the Harlingen Post Office and af-filiated postal inspectors acting in concert with them.

CVisPDF - www.faxio.com

d.  Plaintiff refers to Px-70-O regarding retaliation/
harassment against plaintiff for seeking to perform his du-
ties as a union rep in the matter of a fellow employee's
grievance, noting that plaintiff had complained about griev-
ance tampering by postmaster Martinez, but in response she
began hostile conduct to the point of evicting plaintiff from
the grievance site, which she had no authority to do so.  Al-
so noticed in the letter, are other harassment activity by
other management at Harlingen in connection with plaintiff
discharging his union duties in connection with employee
grievances (note the long term and continuing hostility ema-
nating from management against the legitimate activity of
the worker's union and its rep).   Under the bargaining a-
greement, postmaster Martinez did not have any authority to
run plaintiff out of the grievance site, since the USPS and
APWU representatives were of equal standing at such.

3.  Further response to defendants objections to plaintiff's
references to criminal acts by defendants:  Plaintiff acknow-
ledges that he does not have the authority to prosecute any
of the defendants for actual criminal offenses under Federal
penal statutes, but would show that postal laws/regulations
and labor relations statutes and regulations contain many
semi-criminal penalties, that are so closely associated with
the "criminal" activity of defendants against plaintiff, such
that the United States government, being a defendant in this
cause and also the only authorized prosecutor, is responsible
and culpable for why these defendants remain unindicted and
have conducted their nefarious campaign against plaintiff in

CMsPDF - www.fasiia.com

open impunity and without fear of even the slightest repris-
als.

4.  Plaintiff would relate the above and foregoing to his al-
legation of a far-ranging conspiracy among defendants in the
Harlingen Post Office to prevent his performance of his union
responsibilities as well as to deprive him of his job and
economic viability and his ability to support his spouse and
dependents.

Additional facts supporting conspiracy/retaliation:

In 1974, defendant Martinez was unilaterally assigned to
the Harlingen Post Office.  Plaintiff, in his official union
capacity filed a grievance on a potential National Agreement
violation.  Through the Step 3 grievance decision, she was
returned to the Weslaco Post Office, her former employing of-
fice.  In 1987, she returned to the Harlingen Post Office as
Postmaster with the authority to hire and fire employees, in-
cluding plaintiff.  Shortly thereafter, she and most of the
Harlingen Post Office management under her supervision, began
a campaign and course of conduct of harassment, intimidation
and retaliation against plaintiff.  The initial overt action
to fire plaintiff or force him to quit his job was begun in
1988, with a fabricated Letter of Warning by Martinez and
S.P.O. Rocha.  In 1991, even though the L.O.W. was outdated
and of no effect, the L.O.W. was used as an element of ad-
verse record in a newly fabricated seven-day suspension.  The
7-day suspension was never adjudicated.  On March 20, 1992,
plaintiff was issued an emergency suspension, without any
reason whatsoever being provided.  A mysterious restricted-

CUtePDF - www.tauiu.com

delivery, registered letter addressed to plaintiff was
floating around Harlingen Post Office shortly thereafter,
whereby USPS management actually claimed that they had at-
tempted to deliver same twice, although the real intention
was that plaintiff should never receive same (Plaintiff be-
lieved it contained the original letter of removal for the
plaintiff, but because he never received it cannot totally
affirm that was the contents). In March 31, 1992, plaintiff's
legitimate O.W.C.P. claim for heart problems engendered in
November, 1991 resulting in plaintiff going to the hospital,
was received by defendant USPS in Corpus Christi, after it
had been filed in February with the Dallas O.W.C.P. office.
This resulted in uncertain activity on the part of the sec-
tional center management, to seek removal of plaintiff, as
shown by Defendant Perez, a co-conspirator, signing a sworn
statement on April 7, 1992, to that effect.  Plaintiff be-
lieved USPS management was behind the effort to remove
plaintiff.  Thereafter, on April 10, 1992, plaintiff was
issued a proposed Letter of Removal, using the "so-called"
pending seven-day suspension as an element of part of the
alleged adverse record (but was not received by plaintiff
until April 16, 1992, for whatever reason).  On May 10, 1992
the Letter of Decision was received from USPS, informing the
plaintiff that he had been removed from employment with USPS.
Plaintiff would also point out that even though he was fi-
nally reinstated, the defendants attempted to settle the
fraudulent seven-day suspension, several months after plain-
tiff had been forced into retirement by defendants.  Plain-

tiff believes the above shows a consistent pattern of hostile
and spiteful misconduct whereby multiple members of the USPS
management at Harlingen Post Office participated in an ac-
tive conspiracy against plaintiff.

5.  As a further example of defendants' retaliation and con-
spiracy against plaintiff, plaintiff directs the Court's at-
tention to Px-62E an investigation packet to show that the
postal inspectors office out of Corpus Christi was involved
in the conspiracy, to the extent that there was an egregious
"white-wash" analogous to the fox guarding the hen house. The
text of the report shows the prejudice of Defendant Figueroa.
In the packet are additional individual copies of Figueroa's
slanted interviews. Note certain exhibits to that packet that
show the pervasiveness of the harassment/conspiracy/retalia-
tion:

a.  Exhibit F - Clock Rings for Frank Rodriguez showing
where plaintiff was during March 13, 1992 at what times, that
he was on the clock at 4:45 p.m. contrary to the S.P.O.'s al-
legation to the contrary.

b.  Exhibit G (2 pp.) - Sign Out and In Log (2/13/92 to
3/11/92) showing plaintiff was the only employee required to
sign in and out on a regular basis (1st p., log allegedly de-
livered by Defendant Cortez, acting S.P.O.; 2nd p., plaintiff
was the source of the log, claimed to have been delivered by
said S.P.O.).

c.  Exhibit I - Memorandum of Interview; A.P.W.U. rep.
of S.P.O. regarding the alleged incident, showing the pre-
judice of S.P.O. against plaintiff in bringing the alleged

incident against him.

6. As a further example of defendant's discrimination a-
gainst plaintiff, including age and gender, as well as re-
taliation, plaintiff submits a Step 2 Grievance Packet, Px-
70D, showing how defendants required plaintiff to observe
and follow a rigid written daily work schedule, when they
did not require same for any other clerk craft employee to
observe or follow any kind of rigid written daily work sche-
dule, and plaintiff was the third in seniority in the clerk
craft (which was motivated by a desire to establish poor
performance on the part of plaintiff of his assigned duties).
Note also the difference in the sign out and in log of 5/91
and 2/92, where other employees were signing in 5/91, but
only plaintiff was required to sign in and out in 2/92. Note
Px-70R, being a letter from plaintiff to postmaster Martinez,
dated June 29, 1992, whereby plaintiff was seeking copies of
the sign out/sign in log, along with important details that
would show the continuing nature of defendants harassment and
intimidation and discrimination against plaintiff personally,
to which proper request, there was no response of provision
of the requested information. Plaintiff believes that added
information can be supplemented to further establish defen-
dants' discrimination/harassment/retaliation in this matter.

7. Plaintiff would show that defendants have been excruciat-
ingly punitive in depriving him of money/benefits to which he
is entitled, especially at the end of the removal/retirement
force-out. Defendants claimed to have paid plaintiff, the
back pay that he was owed in 1992, according to proper pay-

CVAPDF - www.fastio.com

roll records, but plaintiff refers to Exhibits Px-74 through
Px-74F and incorporates same by reference the same as if ful-
ly copied and set forth at length herein, to show that they
did not pay him his 65.50 hours of back pay for overtime,
when in actuality, they paid him for the 65.50 hours, using
his accrued benefits, which in effect was not really charge-
able for the back pay overtime.  Plaintiff cites this as the
continuing oppression of plaintiff, even after he succumbed
to the overwhelming harassment/conspiracy/intimidation/re-
taliation and retired from the service in October, 1992.  His
action for damages from the miscalculation of money owed him,
has been ridiculed by defendants, causing plaintiff addition-
damages from being defrauded by defendant tort-feasors.

    Plaintiff would also show that, as noted above, he was
continuously seeking overtime as a senior clerk, which was
not being granted because of the misconduct of defendants,
but the requested overtime not being granted, would demon-
strate that defendants were using economic/financial con-
straints, such as limiting overtime, to force plaintiff out
of his position with the Harlingen Post Office, and also is
reflected in an unwillingness to pay plaintiff all of the
money due him out of the right account---which is intention-
al financial/economic harm to him and his dependents, which
plaintiff would show using additional exhibits listed in his
Exhibit List. (See Exhibits Nos. Px-70I, Px-70J, Px-70M with
attachment, and Px-70S).

8.  Plaintiff would show the court that he finally received
notice of the last administrative appeal to the EEOC being

CutePDF - www.testa.com

referred to the U.S.P.S. for subsequent action consistent with plaintiff prevailing, but defendant USPS has refused to act, claiming that it is prevented from acting because of the ongoing cause herein.  It is incomprehensible that defendants should be able to challenge jurisdiction, while arguing administratively that they cannot go forward with plaintiff's remedies because of the jurisdiction of this Court.

CONCLUSION.  Plaintiff believes the prior pleadings and authorities and arguments, plus the above pleadings, along with the Exhibits referred to previously and above, clearly show the Court's jurisdiction, and because of genuine issues of relevant material facts, summary judgment and dismissal of the case are not appropriate.  Plaintiff believe that the pervasive misconduct on the part of defendants should cause the Court to see the need for accountability for defendants, and apparently the only forum available to plaintiff for being made whole.

PRAYER FOR RELIEF

PREMISES CONSIDERED, Francisco R. Rodriguez, prays that the Court grant him relief commensurate with the above and prior pleadings, and grant him any other/further relief to which the Plaintiff may be entitled.

Respectfully submitted,

DAVID E. FAST
TBA #06850500, S.D. #2129
12950 Leopard St.
Corpus Christi, TX 78410
512/241-4495
Attorney for Plaintiff

# VERIFICATION

STATE OF TEXAS    )
                       )
COUNTY OF NUECES   )

    I, FRANCISCO R. RODRIGUEZ, residing in Harlingen, Cameron County, Texas, and the plaintiff in the above-entitled cause, do hereby swear that I have read the above response, that the facts therein are within my personal knowledge and the state-ments herein are true according to the best of my knowledge, information and belief, and that it is not interposed for delay or other improper purpose.

                                   FRANCISCO R. RODRIGUEZ

    SUBSCRIBED AND SWORN TO before me on the ____ day of June, 1997.

                                   Notary Public, State of Texas
                                   My Commission expires Sept. 14, 2000

## CERTIFICATE OF CONSULTATION

    This is to certify that on the ____ day of June, 1997, I consulted with defendants' counsel, by phone, but there was no discussion on this supplement with the said attorney, the primary topics were my appearance and the status conference, on the ____ day of June, 1997.

                                   DAVID E. FAST

## CERTIFICATE OF SERVICE

    This is to certify that a true and correct copy of the Supplemental Response was this day delivered to the opposing party's attorney of record, by FAX, or by hand delivery or certified mail, return receipt requested, by depositing same in a depository of the U. S. Postal Service in a wrapper properly addressed, postage prepaid, to the said attorney on the ____ day of June, 1997.

                                   DAVID E. FAST

CitiPDF - www.fastio.com