7̷i̷ℳ̷𝒟 6-2-98

United States District Court
Southern District of Texas
FILED

JUN 2 ᵔ 1998

Michael N. Milby, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| FRANCISCO R. RODRIGUEZ, | ) | |
| Plaintiff | ) | |
| | ) | Cause No. B-95-150 |
| VS. | ) | Civil |
| | ) | |
| UNITED STATES POSTAL SERVICE-ET AL, | ) | |
| Defendants | ) | |

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT(FRCP RULE 56)

TO THE HONORABLE MAGISTRATE JUDGE JOHN W. BLACK:

COMES NOW FRANCISCO R. RODRIGUEZ, plaintiff in the above referenced cause and files his Motion for Partial Summary Judgment, against the UNITED STATES POSTAL SERVICE, ET AL., defendants, under the Federal Rules of Civil Procedure, Rule 56(c), and in support therefor would respectfully show the Court as follows:

NOTICE: Plaintiff is using many of the exhibits that have been previously submitted with prior pleadings, most notably, "Plaintiff's Supplemental Response to Defendants' Motions for Summary Judgment and for Dismissal" which is incorporated by reference the same as if fully copied and set forth at length herein, with those exhibits and the exhibits referred to herein, being combined in one Exhibit Appendix, and tabbed in accordance with local rules. Plaintiff has attempted to adopt the same scheme of exhibit numbering that has been used in prior pleadings.

### PARTIAL SUMMARY JUDGMENT FOR INSUFFICIENT BACK-PAY AWARD

1. FACTUAL ASSERTIONS.

a. FRANCISCO R. RODRIGUEZ, Plaintiff, was employed by

- 1 -

CNPDF - www.fosio.com

the U. S. Postal Service (hereinafter "USPS") in April, 1966, until his retirement on October 2, 1992.  Plaintiff was concurrently local president of the American Postal Workers Union, AFL-CIO (hereinafter "APWU"), for well over 24 years with one of his primary responsibilities to enforce the APWU and USPS' (hereinafter "parties") employment Collective Bargaining Agreement (hereinafter "CBA"), as further delineated in Plaintiff's Third Amendment to Original Petition, (hereinafter "3rd Am./Pet."), Section II, Pages 2 and 3.

b.  Plaintiff would cite by incorporating by reference the Alleged Facts of the prior pleading, under "I. - Retaliation" to not only show the retaliatory attitude that was the causation of plaintiff being forced to resign from the USPS in October, 1992, but was the same adversarial attitude that caused the senior postal management to deprive plaintiff of all of the money that was due him under his back-pay award, or as noted below, used money from plaintiff's own accrued accounts to pay his back-pay award.

c.  Plaintiff would also cite by incorporating by reference, additional alleged facts contained in "B. Arguments and Authorities" that demonstrated a continuing pattern of retaliation by USPS-Harlingen management against plaintiff for performance of his union duties, which is the same continuing pattern by defendants to deprive plaintiff of all of the money that was due him, based on his requests for overtime and the higher rate of pay to which he was entitled.

2.  <u>SPECIFIC ALLEGATIONS ON INSUFFICIENT BACK PAY.</u>

CutePDF - www.fasiso.com

**a.** Plaintiff directs your attention to the "Summary of Exhibits on Francisco R. Rodriguez' Back Pay", being the first item in the attached appendix, along with the exhibits referenced herein, showing more clearly by substantial detail the manipulation of plaintiff's back-pay award by defendants, with the summary and exhibits incorporated by reference the same as if fully copied and set forth at length herein.

**b.** Irregularities before plaintiff's reinstatement that affected the back pay award:  Plaintiff would show that Postmaster Mary Martinez was favoring junior lower wage clerks and casual employees for overtime work, over senior, regular clerks, and was continually denying plaintiff and other senior/regular clerks necessary and equitable overtime work, and would only reluctantly authorize plaintiff and other senior/regular clerks to work overtime pursuant to Article 8 of the National Agreement.

1) By letter dated May 13, 1991, plaintiff requested a legitimate business reason for the overtime work disparity in the clerk craft (Plaintiff's Exhibit Px-70C).

2) By handwritten makeshift work schedule dated May 16, 1991, plaintiff would show defendant Mary Martinez retaliated and issued him an oppressive schedule confined to an 8-hour regular work day (Plaintiff's Exhibit Px-70W).

3) By letter dated June 6, 1991, defendant Mary Martinez, assures plaintiff of her compliance with the agreement by USPS and APWU regarding overtime work for plaintiff (Plaintiff's Exhibit Px-70F).

-3-

.

4)  By letter dated July 1, 1991, defendant Mary Marti-
nez posts clerk craft seniority roster for Harlingen USPS
(Plaintiff's Exhibit Px-70X).

5)  By letter of August 28, 1991, plaintiff complains
of potential dereliction of duties by defendant Mary Martinez
because of her constraining him to work too few hours to ac-
complish his assigned duties, placing her on notice (Plain-
tiff's Exhibit Px-70H).

6)  By letter dated September 25, 1991, plaintiff re-
quests clerk craft overtime work analysis from defendant Mary
Martinez (Plaintiff's Exhibit Px-70I).

7)  By letter dated September 26, 1991, defendant Mary
Martinez provides plaintiff with a partial overtime work
hours list (Plaintiff's Exhibit Px-70J).

8)  Plaintiff receives from defendant Romeo Rocha, a
copy of a handwritten overtime list dated November 7, 1991,
along with a copy of the overtime desired List for the 4th
Quarter of 1991 (Plaintiff's Exhibit Px-70V).

9)  Copies of the Weekly Hour Reports for clerk craft
for Harlingen USPS from 1/1/91 through September, 1991(Plain-
tiff's Exhibit Px-79).

10)  By letter dated February 25, 1992, from defendant
SPO Arturo Cortez to plaintiff, notice unilaterally removing
plaintiff's VOMA duties from Assignment No. 7 (awarded 4/4/83
see Plaintiff's Exhibit Px-22), shown as Plaintiff's Exhibit
Px-23; by letter dated March 31, 1992, plaintiff complained
defendant Postmaster Martinez about giving his VOMA duties to

- 4 -

ChMPDF - www.fastio.com

another junior clerk, causing him to lose a level 6 compensation (Plaintiff's Exhibit Px-26)

    <u>c.</u>  Irregularities continuing, beginning with the time the parties became aware that plaintiff would be reinstated, even before plaintiff returned to work:

    1)  By letter dated June 29, 1992, from plaintiff to defendant Mary Martinez, the plaintiff requested that his name be placed on the Overtime Desired List for the Third Quarter of 1992, in anticipation of being reinstated (Plaintiff's Exhibit Px-70S); restricting plaintiff from overtime had been a continuing problem <u>before</u> attempting to force him out, which was a continuous violation of Article 8 of the National Agreement and the LMOU.

    2)  By letter dated July 22, 1992, defendant Louis Bazaldua instructs plaintiff to return to duty (Plaintiff's Exhibit Px-15).  Harlingen USPS records show plaintiff being reinstated on August 2, 1992.

    3)  By letter dated August 29, 1992, from plaintiff to defendant Louis Bazaldua, plaintiff requests that the USPS expedite his back pay award (Plaintiff's Exhibit Px-77A).

    4)  By letter dated September 1, 1992, defendant Louis Bazaldua articulates special instructions to the Postal Data Center in Minnesota to be used in processing plaintiff's back pay (Plaintiff's Exhibit Px-69), with handwritten notation to Tom Seeger by Bazaldua on September 15, 1992; the apparent telephone instructions were to deny plaintiff the higher level pay and overtime in violation of the E.L.M., the National

- 5 -

CVisPDF - www.fenixx.com

Agreement and the LMOU.

5)  The Back Pay Award, dated September 17, 1992, con-
taining incorrect calculations according to plaintiff, was
forwarded to the Harlingen Postmaster and plaintiff (Plain-
tiff's Exhibit Px-70).

6)  Plaintiff had previously filed his grievances on
August 13 and 14, 1992 on higher level of pay and overtime,
with the Harlingen USPS, even before the incorrect back pay
award was made in September 17, 1992.  Subsequent to the
two grievances, an EEO complaint was filed, on plaintiff's
back pay, which consisted of plaintiff being made whole.  The
formal EEO was dated on or about August 29, 1992.  By letter
of September 11, 1992, Herbert Diaz Jr., Labor Relations Man-
ager of San Antonio District, reported on EEO discrimination
complaint #3-U-1169-92 (Plaintiff's Exhibit Px-77).

7)  By letter dated October 1, 1992, defendant Roberto
Pantoja, denied plaintiff's grievance on his back pay, not on
the basis of the amount being correct or incorrect, but on
the USPS' inference that plaintiff had agreed to the amount
of the settlement by cashing the $5,984.84 lump sum check
(Plaintiff's Exhibit Px-73C).

    d.  Plaintiff's Various Analyses of Pay Records/Journals

1)  Plaintiff's Overtime (OT) Work (W) Hour (Hr) Analy-
sis (Plaintiff's Exhibit Px-79) contains information extrapo-
lated from official weekly hour reports and plaintiff's per-
sonal pay records from 1991, 2-week pay periods PP1 thru PP21
(using the O.T. of 3 junior clerks-versus reduced O.T. worked

- 6 -

by plaintiff; plus the higher level pay plaintiff should have received; plus the 13 weeks of O.T. at 8 hours per, results in an estimate of $12,744.41 extra for overtime including the higher level, less the actual O.T. paid $ 765.55, leaving an extra total amount of $11,978.86). Also, see Plaintiff's Pay Records for 1991 (Plaintiff's Exhibit Px-79A). Plaintiff's reconstruction also contains Weekly Hour Reports for PP1 through PP21 for 1991 for clerk craft showing the disparity (40 pages of reports plus 3 pages of requests).

2) Plaintiff's Reconstruction of PP1 through PP21 of for 1992, Total Earnings and Retirement Contributions (Plaintiff's Exhibit Px-74A); Plaintiff's Reconstruction of (Purported) Back Pay Award (Plaintiff's Exhibit Px-74B); and Plaintiff's Analysis of Benefits Used to Fund Back Pay Award (Plaintiff's Exhibit Px-74C) showing defendants were using benefits that had accrued to fund the back-pay award.

3) Plaintiff's Leave and Entitlement Calculation shown as Plaintiff's Exhibit Px-72C, reduction for his termination period.

4) Plaintiff's Leave Worksheet for 1992, dated September 16, 1992, shown as Plaintiff's Exhibit Px-73A.

5) Plaintiff's Payroll Journals for PP1 through PP21 for 1992, for plaintiff, shown as Plaintiff's Exhibit Px-82A, see Wolney's response to plaintiff's letter of 8/10/94.

e. Correspondence related to plaintiff's analysis of pay documents/records showing the back-pay award as an incorrect payment:

-7-

1) By letter dated May 31, 1993, plaintiff responded to
defendant Louis Bazaldua's offer to settle the outstanding
7-day suspension, even after plaintiff had retired, by show-
ing its impact on the back pay award, that plaintiff was
contesting (Plaintiff's Exhibit Px-72).

2) By letter of June 14, 1993, plaintiff was still re-
porting miscalculation of his back pay claim.  By letter of
July 14, 1993, Joseph Hopkins, Human Resource Manager of the
USPS San Antonio District, responded to that letter (Plain-
tiff's Exhibit Px-73) referring to USPS calculations of the
period from May 15, 1992 through August 2, 1992, claiming
plaintiff was not entitled to be paid overtime during his
administrative leave.

3) By letter of August 24, 1993, plaintiff was respond-
ing to a pay adjustment paycheck for pay period 3 of 1992,
whereby certain payments were omitted, indicating that plain-
tiff would not be using the grievance procedure for relief,
making his request for documents as relevant to his back pay
award and wrongful termination Step 3 decision (11 requests),
from defendant Louis Bazaldua (Plaintiff's Exhibit Px-74).

4) By letter of September 13, 1993, defendant Bazaldua
responded to plaintiff's August 24, 1993 letter, refusing to
provide the requested documents, and referring to prior cor-
respondence with Hopkins and Postal Data Center calculations
(Plaintiff's Exhibit Px-75).

5) By letter of November 8, 1993, Anthony Vegliante,
Labor Relations Manager, Washington, responded to Thomas A.

Neill, APWU Director's correspondence of October 12, 1993, forwarding to Southwest Area Office for review and response (Plaintiff's Exhibit Px-76); also, Neill's second request for a response by letter of February 17, 1994 (Plaintiff's Exhibit Px-76A), remains unanswered.

6) By letter of January 25, 1994 by plaintiff to V.G. Duran, District Manager of Customer Services, San Antonio, complaining of problems with obtaining the rest of his back pay, plaintiff pointed out other irregularities at the Harlingen USPS (Plaintiff's Exhibit Px-78A); response letter of February 4, 1994, by Duran, refusing intervention on the back pay and other matters (Plaintiff's Exhibit Px-78).

7) Runyon correspondence (Plaintiff's Exhibit Px-91) containing about 3 letters from January, 1994 to May, 1994, showing plaintiff's attempt to contact the Postmaster General Runyon about his complaints including back pay.

8) By letter of March 3, 1995, defendants provided explanation of plaintiff's questions/concerns about plaintiff's Annual Leave for both the present and the future (Plaintiff's Exhibit Px-84).

3. <u>LEGAL ARGUMENTS & AUTHORITIES FOR PLAINTIFF'S MOTION</u>

<u>a.</u> Under Federal Rule of Civil Procedure Rule 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the summary judgment record] which it believes demonstrates the absence of a genuine issue of material fact;" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

Once this burden is met, the burden shifts to the non-movant
to establish the existence of a genuine issue of fact for
trial.  Whether the record supports a genuine issue of fact
is a question of law for the Court to decide.  To resolve
this question, the Court must view the competent summary
judgment evidence in a light most favorable to the non-movant

   b.  Plaintiff emphatically urges that the immunity ques-
tion, that has been raised by defendants in their defense in
general, should have no application to this motion for par-
tial summary judgment because it is undisputed that plaintiff
should receive his back-pay.  There is no fact issue since the
award may be sufficiently/accurately figured mathematically,
which is a ministerial function of the defendants and their
agents and representatives, and therefore, the immunity ques-
tion is not applicable herein.  Plaintiff is not admitting
that the prior immunity defenses are applicable to his other
causes of action, but is merely pointing out they do not ap-
ply to this matter.

   c.  Furthermore, should defendants persist in arguing
the matter of immunity, anyway, plaintiff would show that the
actions of defendants, en masse, was not objectively reason-
able; Pfannstiel v. City of Marion, 918 F.2d 1178 (5th Cir.
1990); and in fact, any miscalculation of the back pay award
was partly attributable to the severe adversarial positions
being continuously employed by defendants against plaintiff
in retaliation for his union representation, as well as dis-
crimination against plaintiff because of his age, gender and

-10-

ethnicity.  Defendants by their gross miscalculations of many benefits owing in his back pay claim, violated plaintiff's constitutional property rights to compensation, as well as the Step 3 settlement agreement, plus the National Agreement, the E.L.M. and the LMOU.

   d.  Without arguing the non-applicable immunity question herein, plaintiff would complain of the spillover from the causes of action, being present in the back pay claim, that should result in liability for the USPS, as well as individual management, who can be held liable despite claims of immunity if (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injury; Baker v. Putnal, 75 F.3d 190 (5th Cir. 1996), citing, Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992). Plaintiff cites as an example, defendant Bazaldua special instructions to the Postal Data Center without authority and contrary to the Step 3 settlement, as an example of such.

   e.  Plaintiff is entitled to partial summary judgment as a matter of law because defendants are unable to show any genuine issue of material fact, especially after plaintiff has demonstrated by the above and attached, summary judgment evidence that defendants not only erred in calculating the amount, but willfully and intentionally or in bad faith, arrived at a significantly reduced amount out of hatred, ill-will and spite against plaintiff.

PRAYER FOR RELIEF

- 11 -

CutePDF - www.texto.com

PREMISES CONSIDERED, FRANCISCO R. RODRIGUEZ, prays that the Court grant his motion for partial summary judgment, and in the alternative, to grant him a money judgment for the short-fall in the moneys that were originally ordered paid to plaintiff but for the interference by defendants with the calculation of the amount he should have received from them, and grant any other/further relief to which the Plaintiff may be entitled.

Respectfully submitted,

DAVID E. FAST
TBA #06850500, S.D. #2129
12950 Leopard St.
Corpus Christi, TX 78410
512/241-4495
Attorney for Plaintiff

### CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the Motion for Partial Summary Judgment was delivered to opposing party's attorney of record, by FAX, or by hand delivery or certified mail, return receipt requested, by depositing same in a depository of the U. S. Postal Service in a wrapper properly addressed, postage prepaid, to the said attorney on the _1st_ day of June, 1998.

DAVID E. FAST

### CERTIFICATE OF CONSULTATION

This is to certify that I attempted to consult with opposing attorney of record on the _1st_ day of June, 1998, without any resolution of the matters raised in Plaintiff's Motion for Partial Summary Judgment.

DAVID E. FAST

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

FRANCISCO R. RODRIGUEZ,                )
                    Plaintiff          )
                                       )    Cause No. B-95-150
        VS.                            )    Civil
                                       )
UNITED STATES POSTAL SERVICE-ET AL,    )
                    Defendants)

ORDER FOR PARTIAL SUMMARY JUDGMENT (FRCP RULE 56(c))

On the _____ day of _____, 1998, came on to be heard Plaintiff's Motion for Partial Summary Judgment and it appearing to the Court, appropriate notice has been given to opposing parties, and after opportunity for a hearing if necessary, or requested;

IT IS THEREFORE HEREBY ORDERED that Plaintiff's Motion for Partial Summary Judgment is granted, with the following additional relief granted to plaintiff, FRANCISCO R. RODRIGUEZ:


SIGNED this _____ day of _____, 1998.


_____
JUDGE PRESIDING