*95*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

SEP 1 9 2000

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| FRANCISCO R. RODRIGUEZ | § | |
| Plaintiff | § | |
| | § | Cause No. B-95-150 |
| VS. | § | Civil |
| | § | |
| UNITED STATES POSTAL SERVICE, | § | |
| ET AL | § | |
| Defendants. | § | |

**PLAINTIFF'S ADDED SUPPLEMENTAL/BRIEF TO PLAINTIFF'S THIRD AMENDED PETITION AND ADDED RESPONSES TO DEFENDANTS' MOTIONS TO DISMISS, AND RE-URGES HIS (1) PARTIAL SUMMARY JUDGMENT; (2) BACK PAY/FRONT PAY; (3) GENDER/SEX/AGE-BASED DISCRIMINATION; AND (4) RETALIATION CLAIMS, AND PLAINTIFF'S RESPONSES TO DEFENDANTS' MOTIONS TO DISMISS, HIS: (1) PARTIAL SUMMARY JUDGMENT; (2) CLAIMS AGAINST INDIVIDUAL DEFENDANTS; (3) CLAIMS UNDER 18 U.S.C. § 1709; (4) CLAIMS OF EMOTIONAL DISTRESS AND ANXIETY; (5) CLAIMS OF DEFAMATION; (6) CLAIMS OF INTERFERENCE WITH PROTECTED PROPERTY INTEREST; CLAIMS UNDER 1983; (7) ALL CONSTITUTIONAL TORT CLAIMS, AND URGES CASE IS RIPE TO SUBMIT TO JURY ON THE MERITS.**

TO THE HONORABLE U.S. MAGISTRATE JUDGE BLACK:

COMES NOW, FRANCISCO R. RODRIGUEZ, Plaintiff in the above-numbered and entitled cause, and his added supplemental pleading/brief, to the third amended complaint; his added responses and brief of the defendants' continuous motions to dismiss and for summary judgment; and added response to the defendants' continued failure to respond to many of his complaints and claims; and defendants' failure to respond plaintiff's repeated requests from the defendants for documents/information relevant to two crucial issues of material fact, and at the center of his complaints and claims, belatedly made available to plaintiff; and in support would respectfully show the Court as follows:

1

# I – ADDITIONAL SUPPLEMENTAL RESPONSES AND BRIEF

## A. Additional Responses

Plaintiff argues he is disappointed because he was denied the right of discovery propounded on the defendants, noting that it poses an unfair and prejudiced disadvantage against him, and restricts the ability to develop his case for submission to the jury. Plaintiff also argues that the Court is precluded from making a complete credibility evaluation on the defendants, resulting in the dismissal of several of plaintiff's complaints and claims. Plaintiff would show that has given the defendant's adequate advanced notice with repeated requests from them, to come clean with him, to produce all documents/information relevant to two of the most crucial issues asserted by plaintiff, since April of 1992, at the forefront of his complaints and claims, with specificity but not limited to, (a) all PS Forms 2240 on the issue of back pay; and (b) plaintiff's registered letter No. R 563 404 954 (letter) intact as mailed to him in late March of 1992, on the issue of the letter, by showing that defendants have consistently failed to respond and simply ignored him. Plaintiff points out that the concealed/destroyed letter by the defendant's, and the outstanding 2240's, showing that both are interrelated and integral parts of, and at the center of the subject matter in the defendants' conspiracy scheme, to commit fraud and deprive plaintiff of his job, back pay and letter, among other benefits, by showing that plaintiff's complaints and claims that were never investigated, with an ongoing cover-up by postal management, and the postal inspection service; and plaintiff's elected congressional officials were mislead by the defendant's about his back pay and letter issues, see Px-0036 and Px-0037, and assassinated plaintiff's character, in prior pleadings/briefs incorporated by reference the same as if fully copied and set forth

CVisPDF - www.fenira.com

at length herein, noting that concealing/destroying evidence by the defendant's, are gross violations of postal regulations, laws, and federal laws, which is consistent with defendant Martinez *modus operandi,* which is an admission of guilt/wrongdoing, being permitted with a cover-up by postal hierarchy, and a good example of the then-ongoing "violence in the post office", placing the blame on the bargaining unit employee, when the real problem, as in this case lies within the corrupt postal management nationwide, in prior pleadings/briefs incorporated by reference the same as if fully copied and set forth at length herein; and unfortunate that other victims of this type of postal management corruption, and many which are similarly situated in the Harlingen USPS in prior pleadings/briefs; and are unable to take those wrongdoer/defendants to task, incorporated by reference the same as if fully copied and set forth at length herein. Plaintiff would show that he has responded to several of defendants' motions to dismiss and for summary judgment (partial summary judgment in the alternative). Plaintiff would show and believes that he is entitled to an added supplemental pleading and brief to his third amended complaint.

B. Plaintiff would respectfully urge the Court, to further review the evidence of material fact, together with his added supplemental pleading/brief herein, of the third amended complaint; and the Court's reconsideration of plaintiff's complaints and claims, and for plaintiff's long-waited day in court, to send out a message that the egregious behavior by the defendants against plaintiff is unlawful, and unacceptable in the workplace. Plaintiff restates and reurges his partial summary judgment claims; back pay/front pay; gender/sex, and age-based discrimination and retaliation claims; mail criminality; and federal tort claims; reasserts and re-urges his response to the defendants' dismissal of his

3

CHIPDF - www.fsino.com

(1) partial summary judgment; (2) claims against the individual defendants; (3) mail criminality claims under Title 18 U.S.C. § 1709; (4) claims of emotional distress and anxiety; (5) claims of defamation to his character; (6) claims of interference with protected property interests; and, (7) all constitutional tort claims.

C.  Supplemental Memorandum/Brief

Plaintiff would add the following caselaw to the material cited in previous pleadings/briefs filed with the Court, which are incorporated by reference the same as if fully copied and set forth at length herein:

1.  In REEVES v. SANDERSON PLUMBING PRODUCTS, INC., 2000 WL 743663 (U.S.), a case of an alleged violation of the ADEA and the issue of front pay, among other issues.  In this case, the Supreme Court, held that:  (1) prima facie case and sufficient evidence of pretext may permit trier of fact to find unlawful discrimination, without additional, independent evidence of discrimination, though such showing will not always be adequate to sustain jury's finding of liability, abrogating Fisher v. Vassar College, 114 F.3d 1332 (C.A.2 1997), Rhodes v. Guiberson Oil Tools, 75 F.3d 989 (C.A.5. 1996), Theard v. Glaxo, Inc., 47 F.3d 676 (C.A.4 1995), and Woods v. Friction Materials, Inc., 30 F.3d 255 (C.A.1 1994);  (2) in entertaining motion for judgment as a matter of law, court should review all evidence in the record, abrogating Aparicio v. Norfolk & Western R. Co., 84 F.3d 803 (C.A.6 1996) and Simpson v. Skelly Oil Co., 371 F.2d 563 (C.A.8 1967); and (3) there was sufficient evidence for jury to find that employer had intentionally discriminated, thus supporting verdict for employee under ADEA.  In addition, plaintiff calls the Courts' attention to the Court holding that where plaintiff has sustained of presenting a prima facie case, supporting all elements with

4

sufficient evidence, that the defendant has the burden of production, and not just persuasion.  Defendants in our case have utterly failed to meet this burden of production, and not even this burden of persuasion.  Plaintiff perceives that defendants have mounted their summary judgment and partial summary judgment motions because they are unable to meet this burden of production, having failed to produce most of the material/documents that have been requested of them by the plaintiff herein (in spite of sitting in the employer's chair, who normally has most or all of the information/documents in this types of situations), plaintiff attaches over-view addendum to the *REEVES* decision Px-0011 .

2.     In <u>Westfall v. Erwin</u>, 108 S.CT. 580 (1988), the court ***Held:*** Conduct by federal officials must be discretionary in nature, as well as being within the scope of their employment, before the conduct is absolutely immune from state-law tort liability.  See <u>Doe v. McMillan</u>, 412 U.S. 306, 93 S.CT. 2018, 36 L.Ed.2d 912.  Granting absolute immunity for nondiscretionary functions would not further the official immunity doctrine's central purpose of promoting effective government by insulating the decisionmaking process from the harassment of prospective litigation which could make federal officials unduly timid in carrying out their duties.  The threat of tort liability cannot detrimentally inhibit conduct that is not the product of independent judgment, and it is only when officials exercise decisionmaking discretion that potential liability may shackle the fearless, vigorous, and effective administration of governmental policies.  In Westfall, this involved a lawsuit by an Army depot employee who had been exposed to toxic soda ash in a State law tort suit that was removed to Federal Court.  The U.S. Supreme Court upheld the Court of Appeals finding that Federal employees' immunity

must be within the scope of their duties, and also be a discretionary act (denying absolute immunity for nondiscretionary functions). The conduct complained of in Westfall was shown to be sufficiently harmful to plaintiff so that any benefits of immunity did not outweigh the costs; and plaintiff argues defendants misconduct were also sufficiently harmful to plaintiff so that any benefits of immunity to avoid disruptions in government functions, did not outweigh the damage done to plaintiff (certainly immunity should never be used to exonerate the type of retaliatory conduct by defendants in our case). Plaintiff points to prior pleadings/briefs, that have not been controverted by defendants that emphasize this very point. Plaintiff cites: **TITLE 28 USC §** Sec. 2679, which states: Exclusiveness of remedy -

(2) Paragraph (1) does not extend or apply to a civil action against an employee of the Government –

(A) which is brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized.

3. In <u>WILSON v. PENA</u>, 79 F.3d 154 (D.C Cir.1996), this case is about calculation of back pay and exhaustion of administrative remedies, among other issues, as in our case, and the Court held that: (1) limitations period for filing Title VII action never began to run where the EEOC decision gave federal employee incorrect notice of right to sue; (2) suit could not be barred solely for any default in responding to agency's request for information where agency was able to take final action on merits of complaint without the information; and (3) employee had immediate right to suit under Title VII without further recourse to administrative remedies when more than 180 days had elapsed between his petition for enforcement and EEOC's remand order. It does not matter, however, whether Wilson provided the requested information. Because Wilson had

6

CNPDF - www.fxdoo.com

waited for more than 180 days for the EEOC to decide his petition for review, the statute gave him the right to come to court. Neither the agency nor the EEOC could require him to jump through any further administrative hoops. Wilson is significant on the issue of back pay as well as the issue of limitations from a "final" administrative order of an administrative agency ((EEOC in both cases). In Pena, the EEOC made a docketing error that resulted in plaintiff not receiving timely notice of the EEOC's final action, that was somewhat analogous to the EEOC mismailing a decision affecting plaintiff's complaint (assuming the Court does not accept plaintiff's argument/explanation on the **continuous** nature of the USPS grievances and EEOC complaints creating a solid continuous/unified complaint, the failure to make a final decision on back pay and on discrimination defeats any argument by the defendants on limitations and non-exhaustion of administrative remedies, similar to the rational of Pena). Quoting from the EEOC regulation (29 CFR1613.281(c), quoted in Pena ; for the purposes of this part, the decision of the agency shall be final **only** when the agency makes a determination on **all** of the issues in the complaint ..." 79 F.3d at 161(Emphasis by DEF). Since the EEOC did not completely reach a final order on all issues in the continuing saga of plaintiff seeking relief on the two horns back pay and discrimination, until he filed his lawsuit in 1995, there is no basis, using Pena, for either full or partial summary judgments for defendants. Pena noted that the EEOC was unresponsive to Wilson's request for explanation for the amount of the back pay award, in reversing the District Court, which is very similar to the defendants stonewalling plaintiff over a period of years, contrary to the USPS own ELM, MI, and even to this day, **continue** to <u>coverup</u> the abuses in misfiguring his back pay. The court reached a similar conclusion in *McRae*, where the complainant, having sought

relief from the agency for almost two years, was held not to have failed to have exhausted her administrative remedies when she went to court and declined to go forward with an administrative hearing.  843 F.2d at 1496.  Wilson, like McRae, could have chosen to continue to try to resolve the matter administratively.  In many instances, it may be faster and less burdensome to avoid recourse to the courts.  But whether Wilson would finally have obtained what he sought from the agency is irrelevant here.  The only things that matter are that his right sue under Title VII had been perfected, and that he chose to exercise that right.

<u>BACKGROUND</u>

Plaintiff was employed by the United States Postal Service (USPS) since 4-23-66, his work performance and conduct was beyond reproach, by several of defendant Martinez Harlingen USPS predecessor administrators, he was well liked and respected by the local union as the representative of the American Postal Workers Union, AFL-CIO (APWU), and by community leader as well, as acknowledged by their letters of reference Px-0012 union's exhibit X (UX-X).  See also Px-0043, letter dated 5-10-92, from co-worker Gus Barrera recomending plaintiff.

Defendant Martinez then-Mary Munoz was employed by the USPS on 2-16-74, as a letter carrier; and thereafter, approximately 56 days later, on 4-13-74, she transferred into the Harlingen USPS bargaining unit (BU) as a part-time flexible (PTF) clerk, and immediately, apparently on an instant-upper mobility plan, she was assigned to a full-time regular (FTR) clerk position, by Charles J. Krause, then-newly transferred from the Weslaco USPS, (apparently from where defendant Martinez was transferred from) to the Harlingen USPS, as Superintendent of Postal Operations (SPO); plaintiff would point to

the clerk craft BU weekly work schedules, and also to defendant Martinez (Munoz) time cards from then-grievance (Px-20) filed by plaintiff then-local union president by showing she was working 8:00 AM to 16:50 PM w/Sat/Sun days-off, 40-hour work weeks, unlike six (6) of her senior PTF coworkers, (working 6 days, less than 40 hours per week) and circumvented USPS policy rules and procedures, and CBA violations on employment qualifications and probationary period requirements; these alleged violations gave rise to grievance (Px-20), by showing that she worked this assignment approximately four (4) months, pending plaintiff's then-step 3 grievance decision; that resulted in defendant Martinez being excess out of the Harlingen USPS complement, discussed in prior pleadings/briefs.  Plaintiff contends that his then-grievance (Px-20), had disrupted defendant Martinez most desirable, by any reasonable person's standard, position at the Harlingen USPS; undoubtedly resented and never forgotten by defendant Martinez, with a vengeful determination to get even with plaintiff.   In 1987, upon becoming Harlingen postmaster, defendant Martinez displayed an immediate authoritative management style, consistently violating USPS policy rules and regulations, and noting that defendant superiors shielded her misconduct and wrongdoing, shown  by examples: (a) on 11-26-88, defendant Martinez had an on-premises USPS-loading dock employee Bar-B-Q with consumption of alcohol Px-0013; (b) on 12-8-89, defendant Martinez allowed USPS supervisor Daniel Ramon, to sell tamales and pecans to coworkers on the workroom floor Px-0014, these alleged violations were reported to USPS superiors by plaintiff, pursuant to ELM 666.52; thereafter, the complaints were referred to defendant Hernandez; his telephonic response to plaintiff, was, "you keep your nose out of our business" Px-0015; this behavior by defendant Martinez motivated

9

plaintiff to keep personal notes/memos, in prior pleadings/briefs. Defendant Martinez

fabricated allegations against BU employees, and including supervisors, if she did not

like them, and then had them demoted, transferred or fired, if they did not succumb to her

managerial style; by examples: (a) defendant Martinez did not like and did not permit

supervisor Roy Elizondo to participate in the 1987 Local Memorandum of Understanding

(LMOU) negotiations, as done in past practice by defendant Martinez predecessors,

thereafter, on 8-24-88 to 8-26 of 1988, she fabricated allegations of misconduct against

him, and demoted him Px-0016; on November of 1991, SPO-defendant Rocha did not

succeed in plaintiff's 7-day suspension; thereafter, on December of 1991 defendant

Martinez removed defendant Rocha from his position, and replaced him with Acting

SPO-defendant Cortez long enough for him to fabricate charges on 4-10-92 against

plaintiff and fire him.  In 1999, on information and belief, defendant Martinez fired

supervisor-defendant Galvan; defendant Martinez, was a member of the Board of

Directors (Board), of the then-Valley Postal Credit Union (VPCU), with offices in the

basement, below the Harlingen USPS main workroom floor, and was common

knowledge for VPCU postal employee-members to transact business at the VPCU

offices, and defendant Martinez would frequently be there visiting with the VPCU

officers, and on one occasion, defendant Martinez commented, to Dianna Schneider then-

President of VPCU, and to Mary Ann Villafana, then-Vice President of VPCU (about

plaintiff), "'for some reason I just don't like him', 'I don't know why, but he rubs me the

wrong way'" Px-0017; defendant Martinez was on the VPCU Board of Directors, and as

such was patently aware of plaintiff's financial status and the substantial obligations he

had with his creditors, including VPCU.

CMPDF - www.fastio.com

As a further indication of defendant Martinez inimical attitude towards plaintiff as reflected in letter dated 12-6-91 showing plaintiff's concern for her duplicitous supervision at the same time plaintiff was having heart trouble; see Px-0042.

## STATEMENT OF THE FACTS

Plaintiff would point out to the Court that this case is not about plaintiff's misconduct, or of him threatening anyone, be it a USPS management official or coworker alike; but it is about plaintiff's twenty-plus years age-based tenure, of being an aggressive local union representative; with the responsibility to enforce the Collective Bargaining Agreement (CBA), with a lawful right, and an obligation to represent the local APWU membership, of which defendant Martinez was patently aware of, since 1974; which was the threat that interfered with her authoritarian management style, and a determining factor in defendant Martinez's conscious decision to force plaintiff to quit his job, or to fire him; and also by showing that this case is about vengeance, conspiracy and fraud, and the defendant's abuse of power and discretionary authority.  Plaintiff would show that in 1987, when defendant Martinez became Harlingen postmaster, she immediately commenced a pattern of disrespect, retaliation, intimidation, and oppression against him, making his job hard to perform, and his duty to enforce the CBA became an intolerable frustration.  Plaintiff would show that defendant Martinez retaliated against him, by continuously violating the CBA, to "clog-up" the grievance-arbitration process, and keeping him busy, by denying him grievance/document production requests, so he would lose grievances on timeliness, hoping he would quit his job, discussed in prior pleadings/briefs; plaintiff would cite: **5 USC** § 7102, which states:

> Each employee shall have the right to form, join, or assist any labor organization, or to refrain from any such activity, freely and without fear of penalty or reprisal,

and each employee shall be protected in the exercise of such right,

(2) to engage in collective bargaining with respect to conditions of employment through representatives chosen by employees under this chapter; and **5 USC § 7116**, which states:

(a) For purpose of this chapter, it shall be an unfair labor practice for an agency –

(4) to discipline or otherwise discriminate against an employee because the employee has filed a complaint..... (as a union representative).

Plaintiff would show that he has made repeated requests from the defendants for all documents/records, relevant to plaintiff's two crucial issues in his complaints and claims, including those already in the Court's file, by examples; (a) all the requests made relevant to plaintiff's "Restricted Delivery" registered letter No. R 563 404 954; and (b) all requests made relevant to his back pay, including all of the PS Forms 2240 (2240), and especially those requested from defendant Martinez, by examples: by letter from plaintiff to defendant Martinez, dated 2-26-93 Px-002; by letter from plaintiff to defendant Martinez, dated 12-4-94 Px-001; and those 2240's requested from defendant Bazaldua in the Court's file, and noting that the defendants have continued to fail to respond and have ignored each and every document/record request made by plaintiff, in the fraud and corrupt conspiracy by defendants, that deprived plaintiff of his back pay, higher level pay and overtime pay, among other benefits, in the Courts file, incorporated by reference the same as if fully copied and set forth at length herein.

D. <u>Defendants' Conspiracy Use of The Mails to Commit Fraud in Plaintiff's Wrongful Termination And Back Pay</u>

Plaintiff would show that decisionmaker defendant Martinez and principle-actor in the confederacy to fire plaintiff, discriminated against him by intentionally and deliberately, and with conscious indifference, and with complete disregard to his health

12

and financial welfare, wrongfully terminated him from his job without just cause, because

of his union activity; this tortious conduct by the defendants was the direct and proximate

cause to the consequential damages to his health; to his financial losses of, and not limted

to, his cumulating real estate property-retirement income, and other benefits and

entitlements, because of his union activities, discussed in prior pleadings/briefs,

incorporated by reference the same as if fully copied and set forth at length herein.

Plaintiff would show that upon his return to duty with full back pay decision, defendant

Martinez had predetermined a devious back pay **"award"** with unofficial calculations, in

a punitive and harmful manner, in violation of USPS policy, rules and procedures, and

quoting from the,

ELM 311.12, **Prohibition of Discrimination** - which states:

The recruitment, assignment, promotion, and training functions of the Postal
Service may not discriminate for any nonmerit reason such as race, color,
religion, sex, age (40+), union or political affiliations,......,

and ELM 436, subpart(s) which state:

**436.11** An employee ... entitled to receive back pay ... and employment benefits
......which the employee normally would have earned during the period.

**436.3 The installation head, ... initiates and directs** the corrective action to
**assure appropriate earnings** to the employee for the period affected.

F-21 Chapter 7, Time and Attendance Handbook, that states:

**712.1** There is one preliminary activity regarding the preparation of Form 2240,
*Pay, Leave, or Other hours Adjustment Request*, **that is common to all
adjustments** (Px-83).   And quoting **5 USC § 5596**, which states:

Back pay due to unjustified personnel action states:

(A) is entitled, on corrective action of the personnel action, to receive for
the period for which the personnel action was in effect –

( i ) an amount equal to all or any part of the pay, allowances, or
differentials, as applicable which the employee normally would have earned or

13

received during the period if the personnel action had not occurred ....

Plaintiff calls the Court's attention to the document/information requested by plaintiff on the letter and the belated 2240's made available to plaintiff, to which the defendants have continuously failed to respond in prior pleadings/briefs; and the interrelation of the letter and the 2240's, and showing the actions taken against plaintiff with the 2240's by decisionmaker-defendant Martinez, cotortfeasor-defendant Bazaldua, and by coconspirator-defendant Cortez, they knowingly and intentionally, and without regard to plaintiff's welfare causing him mental and financial distress; defendants began a process of illegally deducting moneys from plaintiff's previous earnings of annual leave (AL) and overtime (OT), among other earnings, and transferring those earnings into Administrative Leave (ADM), for his (later-to-be) purported back pay; defendant Martinez being aware of plaintiff's financial obligations, knew that by **only** granting him **40 hrs** ADM, instead of 80 hrs (a normal pay period), and 40 hrs LWOP per pay period would be insufficient and inadequate and cause plaintiff financial ruin, noting that defendant Martinez made a non-discretionary decision granting plaintiff LWOP, without his consent; quoting part(s) of ELM which state:

> 514.22. The granting of LWOP is a matter of administrative discretion and is not granted on the employee's demand...., and

> 514.31. Installation heads may approve requests for LWOP that are not in excess of 1 year.

> 514.51. A request for LWOP is submitted by the employee on Form 3971,... a written justification and statement of reason for the desired absence is **required**.

> 514.23 In granting approval for extended LWOP, there should be reasonable expectation that the employee will return at the end of the approved leave.

> 514. 24 Employees who are on LWOP for a period... totaling 80 hours (normal number of workhours in 1 pay period ...have their leave credits ... earned in one

14

pay period.

519.1 Administrative leave is absence from duty authorized by appropriate postal officials without charge to annual or sick leave and with loss of pay.

See   Martinez own handwritten tabulations of overtime for said pay periods Pxx0035.

Plaintiff call to attention of the Court that these adjustments were made **before** any allegation of misconduct or any other allegation was ever leveled against plaintiff, and showing that the deprivation of his moneys continued, in a harmful and punitive manner until 9-24-92, eight (8) days prior to his retirement on 10-2-92, noting that defendant Martinez' knowledge of plaintiff's financial status, could very well be said of her long-standing deprivation of OT work to plaintiff, which is consistent with defendant Martinez abusive behavior against plaintiff in prior pleadings/briefs incorporated by reference the same as if fully copied and set forth at length herein.

Plaintiff would show the material facts and events, and the actions taken against plaintiff by the defendant's, for which the defendant's have failed to contest or respond to; and by showing the conspiracy events unfold and develop, most of which are not disputed, and are set at length herein, in the following Chronology:

### (All dates hereunder are 1992, unless otherwise noted)

Jan 8 through Mar 19:  plaintiff met with defendant Cortez (Cortez) at least nine (9) different occasions and possibly more , including two on Mar 13 and at least once on Mar 19 without an outcry, in the Court's file;

Jan 11 to 17: plaintiff serves LWOP for 7-day suspension (Px-11);

Feb 25: Cortez removes plaintiff from ranked-VOMA assignment #7 (Px-23), and assigns it to ranked-Window Technician T-6 Gustavo Barrera (Px-24);

Mar 2: defendants Martinez (Martinez) and Cortez call plaintiff to office and instruct plaintiff not clock-in on higher level Electronic Time Clock (ETC) code;

CISPDF - www.texto.com

Mar 9: plaintiff met with Cortez re: plaintiff complained of OT disparate treatment by Cortez; Cortez responded "'she (Martinez) is the boss you know", and I (Cortez) have to run an efficient operation'" (Px-68S1);

Mar 13: plaintiff met with Cortez and defendant Galvan re: grievance extensions (Px-69J);

Mar 13: plaintiff met with Cortez re:sign-out/sign-in log (Px-69G)/(Px-70R);

Mar 19: met with Cortez re: Rosalés, Barrera, Laughlin and Pina grievances;

Mar 20: plaintiff is issued emergency suspension letter (Px-12);

Mar 26: attempted delivery of registered letter R 563 404 954 (letter) at plaintiff's residence by casual letter carrier Robert Cantu Px-0027;

Mar 27: second attempt to deliver letter to plaintiff's residence by FTR letter carrier Rick Gomez Px-0027;

Mar 25: OWCP claim mailed by plaintiff to Dept of Labor; copy of claim mailed to Corpus Christi (MSC), in the Court's file;

Mar 31: MSC received copy of OWCP claim , with detailed information of plaintiff' union activity, from which defendant Perez fashioned his sworn statement;

Mar 31: Martinez and Cortez agreed and made a conscious decision to fire plaintiff (Px-71E);

Mar 31: plaintiff's letter, intended to be delivered, was confiscated from the mail stream; Martinez illegally endorses letter ":wife refused to sign" (Px-71A);

May 6: APWU Cindy Martinez interview with deft M. Martinez (Ux-R) Px-0034;

Mar 31: Martinez/defendant Perez last to have official legal custody of the letter, PS Form 3867 Px-007;

Mar 24: Plaintiff points to pay journal copy from PDC dated 3-24-92, with his pay record copy for PP-07/92 that ended 3-20-92 **before** any adverse allegations were raised against plaintiff Px-0018, noting that it is undisputed that his suspension began with the emergency suspension letter dated 3-20-92 (Px-12);

Apr 7: defendant Perez (Perez) signs sworn affidavit before Postal Inspector Wuenschel (Px-71G);

Apr 8: plaintiff would show defendant Martinez apparently instructed Cortez and T-6 Barrera to process plaintiff's fraudulent pay adjustments, and promote Martinez

16

misdeed and wrongdoing which also explains Perez belated questionable letter dated Sunday 3-29-92 Px-0028 , apparently intended to authenticate his unsubstantiated sworn statement dated 4-7-92 (Px-71G) to Martinez;

APR 7: plaintiff would point to PDC copy of PP-08/92, showing he was charged with 80 hrs LWOP-code 0-60 Px-0019; thereafter, on;

Plaintiff points to PP-9 PDC pay adjustment, for PP-8 and PP-9, that includes $728.70 deducted from PP-7, to clarify the defendants' impalpable handling of plaintiff's 2240's, by showing as follows using plaintiff's AL and LWOP and from prior earnings for the back pay award Px-0026:

(a) 40 LWOP hrs were credited to PP-3, and debited to PP-9, to comply with ELM 512.32– maximum leave carryover, at beginning of year, of 55 days (440 hours).

(b) plaintiff's earnings deducted from PP-7, and applied to as follows:
   (1) $  56.81   0-55-AL, to 0-86-ADM;
   (2) $377.96   0-52 wk hrs plus,
   (3) $  92.14   0-53 OT plus,
   (4) $ 201.79   0-56 SL to make adjustments to PP-8
      $ 254.62  Fed Tax,
         18.46  Medic
         87.83  Retirement,
         10.68  Health ins.

Plaintiff notes that the gross earnings for PP-9 were minus –$140.51 due to plaintiff's payroll (per pay period) deductions of $77.00 and $538.00 direct deposit to his creditors, of which defendant Martinez was aware,

Plaintiff call to the attention of the Court that these adjustments depriving mommy from plaintiff began on 4-8-92, and the deprivation of his moneys continued, in a harmful and punitive manner, until 9-24-92, eight (8) days prior to retirement on 10-2-92, which is consistent with defendant Martinez abusive behavior against plaintiff in prior pleadings/briefs, showing the 2240 activity began with PP-07 and before the suspension occurred; noting a carryover 40 hr LWOP from the seven (7) day suspension

PP-03/92, defendants refused to adjudicate (Px-11);   Plaintiff point to belated 2240's, by

showing the hideous fraud and corruption in the processing of the 2240's (all dated 4-8-

92), of plaintiff's "purported" back pay, as follows:

(a) PP-7, wk 2, (before the suspension) shows plaintiff is paid 3.57 hrs ADM
(86) from PP-7, wk hrs leaving a balance of 36.43 hrs 2240 block 52 Px-0020;

(b) PP-07, wk 2, shows plaintiff is paid 3.57 hrs ADM (86); his AL (55) hrs
are reduced -3.57 hrs Px-0021;

(c) PP-8, wk 1, shows plaintiff is paid 40 hrs ADM (86) Px-0022;

(d) PP-8,wk-1, shows plaintiff is paid 40 hrs ADM (86), debited -60 hrs
LWOP (60) Px-0023;

(e) PP-8, wk 2, shows plaintiff is paid 40 hrs ADM (86); debited -40 hrs
LWOP (60) Px-0024;

(f) PP-8, wk-2, shows plaintiff is paid 40 hrs ADM (86) Px-0025;

Plaintiff calls to the Court's attention to the "remarks" portion of the 2240's by showing

that the information is devious and inadequate, noting ADM is the only remark made, no

mention of AL, OT, or LWOP, quoting part(s) of the F-21 (Px-83) Handbook, which

state:

721.33

The proposed "pay" adjustment is to be discussed in the "Remarks" section of
Form 2240. The adjustment clerk is to include information regarding what
happened and what should have happened on the employee's pay record.

713.1 states: The snap-out two-part Form 2240 should be prepared and handled
as follows:

a.   The original should be should be submitted to the.......PDC as designated **as
soon as** possible.  The form does not need to be held until the close of the pay
period.

b.The carbon copy should be retained by timekeeper or the adjustment clerk as
a record for the fact that an adjustment request was made.

Plaintiff would attach a summary of damages, of $454,884 Px-0045less medical damages in prior pleadings/briefs incorporated by reference the same as if fully copied and set forth at length herein.

Plaintiff would point to (Px-74C) by showing that defendant Martinez was stonewalling his "purported" (which was derived from his LWOP) back pay, that went on for six (6) months from 4-8-92, until seven (7) days before he retired on 10-2-92, was causing plaintiff severe financial consequences totaling $462.00 and $4,304.00 through (only 2 allowed) payroll deductions in addition to other obligations (pay period) payable to VPCU: (a) 2-each of $50.00; (b) $81.00; $235.00, and others, in the Court's file incorporated by reference the same if fully copied and set forth at length herein.
See Px-0039 for additional plaintiff creditors, to which plaintiff was unable to meet those obligations due to defendants' deprivation of his moneys.

Plaintiff calls the attention of the Court to parts of the USPS Management Instruction MI EL 430-90-8, which state:

> IV.B   The postmaster....**is** responsible for ensuring that back pay claims are processed in a **timely** manner.... ;

> IV.C.   The MSC Director, Human Resources, is responsible for reviewing a back pay claim involving ....indefinite suspension....

> IV.D.   The Field Director, Human Resources is responsible for a final review and approval of back pay claim...

> VI.B.2 The postmaster ....is responsible for **certifying** the information provided on Form 8039and granting final approval **prior** to submission to the PDC for Processing.

> VI.C.1  It is essential that the postmaster ....document any unnecessary delays .......in submitting the required information to process their back pay claims.

CXMPDF - www.fenrir.com

Plaintiff would show the Court that this belated documents (2240) settles his query, that undermines, and rebuts the defendant's long-standing hollow rhetoric, of the back pay and registered letter, that: (a) "plaintiff's back pay was properly calculated"; and (b) that, "plaintiff received his full back pay"; and it defies belief, and its illusory to suggest that plaintiff's, "registered letter contained plaintiff's pay check (Px-71M)." Plaintiff would show that he is unable to reconcile the defendant's good intentions by them sending him his two-week pay check via registered mail, on 3-27-92, DMM 911.11, 911.43, the most secure service offered by the USPS, and then 8 days later, on 4-8-92, the defendant's not-so-good intentions of his concocted later-to-be alleged back pay, withheld until 9-24-92, noting that defendant Martinez/co-conspirator-defendant Perez were the last Harlingen USPS employees to have legal custody of the registered letter before it disappeared Px-0027, thereafter the MSC shielded the wrongdoing, in the Court's file, and that is inconsistent with MI VI-B-2, and VI-C-1in the Court's file incorporated by reference the same as if fully copied and set at length herein..

Plaintiff would show that these 2240 documents of material fact concealed by defendant Martinez since 1992; belatedly made available to plaintiff, came as no surprise to him, which is consistent with her practice of 'lie and deny', and "go ahead and grieve it, it won't cost me nothing", attitude, and by showing that defendants Martinez, Cortez and Bazaldua conspired and mislead plaintiff, by issuing him an unconscionable contrived, harmful and fraudulent "lump sum" back pay (Px-70) that is inconsistent with ELM 436, and deviously crafted by "juggling" plaintiff's work and leave hours, and pay records, plaintiff was charged with 448.85 in the Court's file, and in a layman term "plugging square holes with round pegs", by plaintiff's earned OT, AL and of plaintiff's

20

·

CUtePDF - www.testiu.com

benefits, to conform with ELM 512.32, maximum leave carryover of 55 days (440) hours in a manner that would cause plaintiff irreparable financial damage, and loss of employment benefits and entitlements. Plaintiff points to some of his creditors, as examples, his home mortgage lien holder (Bailey Mortgage), especially Hidalgo Federal Credit Union, (formerly Valley Postal Credit Union), that required him to refinance his loan Px-004, and the Harlingen National Bank, that was in the process of foreclosing on his retirement real estate investment properties Px-006, and by showing that the tortious misconduct by the defendants caused him irreparable financial damage. Plaintiff would show that upon his return to duty on 8-3-92, he made several unsuccessful requests from local management, for his back pay and/or emergency salary advances, but to no avail; Thereafter, plaintiff contacted his attorney John Brichacek to help expedite his back pay (Px-77A), who in turn telephonically contacted defendant Bazaldua on several occasions, but again to no avail. Plaintiff would show he continued to make several emergency salary advance requests from defendant Martinez, through defendant Pantoja, pursuant to 857.6 of the F-1 Handbook, and was repeatedly denied the requests. Plaintiff would show that on 9-24-92, Gustavo Barrera, Window Services Technician (T-6), issued plaintiff a Two Thousand ($2,000.00) Dollar, salary advance Px-005, noting that plaintiff's overdue back pay check dated 9-23-92, was in defendant Martinez possession, and later that day of 9-24-92, after plaintiff had received the advanced salary, defendant Pantoja gave plaintiff his back pay check Px-007. Plaintiff points to T-6 Barrera processing plaintiff's 4-8-92, 2240's, and on 9-24-92, also processed plaintiff's salary advance; thereafter, defendant Pantoja hand-delivered plaintiff's "back pay" check, requested a pay-check stub but defendant Pantoja stated he did not have one, but would

21

get it later; thereafter, on 10-17-92, plaintiff received the back pay documentation from defendant Bazaldua (Px-70). Plaintiff would show that he was in constant contact, telephonically and by mail, with defendants Martinez and Bazaldua, and upper USPS management officials regarding his registered letter and back pay as well Px-008; and with Postal Data Center (PDC) regarding his back pay, most importantly with Thomas Henry at PDC phone #612-725-1362, on 12-18-92 Px-009, in which he stated that his hands were tied, in this matter and that the problem apparently was in the Harlingen USPS office Px-002, and to get with personnel; Quoting Managent

Instructions, (IV.G) , which states:

> The Minneapolis Postal Data Center (PDC) **is** responsible for processing back pay Claims....The PDC is **not** responsible for reviewing back pay claims for accuracy...

Plaintiff, also communicated, and more frequently with Ms. Bonnie Gehring at PDC, phone #612-725-1675, especially on 12-28-94 Px-0010, when, apparently out of frustration with plaintiff, told plaintiff, "you better get yourself a lawyer." Plaintiff would show that he could only surmise from Ms. Gehring's advise that she knew something was terribly wrong with plaintiff's back pay, and ethically could not elaborate. Quoting MI (IV.B), which states:

> The postmaster....**is** responsible for ensuring that back pay claims are processed in a **timely** manner....

Plaintiff would show that he also complained to his congressional representatives, but defendant Martinez told them untruths about plaintiff's problems with the USPS; plaintiff reported it to the USPS General Counsel Px-003 as required by 664 of the ELM, and to the USPS defendants' Chief Postal Inspector, pursuant to 664 (b) of the ELM, and to the

FBI, but his complaints were given a deaf ear, discussed in prior pleadings/briefs, and incorporated by reference the same as if fully copied and set forth at length herein.

Plaintiff points to the defendants' frustration of the union investigation, with untruths, denial of information/documents, inconsistencies/conflicting stories, memory loss and recollection of events; the absence of statements/affidavits from and/or the availability of witnesses, regarding plaintiff's letter and his alleged misconduct, denial of letter to plaintiff, illegal confiscation of letter from the mail stream, and destruction of its records discussed in prior pleadings/briefs. Plaintiff would show that defendant Martinez defaced (Restricted Delivery" on the letter and the PS Form 3811 attached to the letter, to justify her illegal endorsement, of wife refused to sign" in prior pleadings/briefs, an abuse of official discretion and authority, DMM 115.1 and 115.21, necessitating the MSC for the unreasonable interference and cover-up, in the Court's file, for the defendant's misconduct and wrongdoing in prior pleadings/briefs. (third amendment section I, page 2, section XII, page 9, section XIII, page 10, section XV, page 11, section XXII, pages 17 & 18), which are incorporated by reference the same as if fully copied and set forth at length herein. Plaintiff would show and believes that he is entitled to a supplemental pleading and brief to his third amended complaint.

<u>AGE-BASED DISCRIMINATION/UNION ACTIVITY/ RETALIATION</u>

Plaintiff would point to plaintiff's grievance, filed on behalf of grievant Juan Valdez, for an alleged $1,173.13 window flexible credit shortage (Px-33), that came to be heard at arbitration at the Harlingen USPS on 4-28-88, in which defendant Hernandez was the USPS arbitration advocate, the evidence at arbitration exonerated the grievant's

shortage, with the decision rendered on 5-2-88, and showing that thereafter, in retaliation, defendant Martinez fabricated plaintiff a letter of warning (LOW) dated 4-29-88 (Px-16), that resulted in a no LOW, and the initial link of defendant Martinez historic continuous allegations of misconduct against plaintiff.  Plaintiff would show that he has complained to defendant Martinez superiors about her misconduct and wrongdoing, never before happened in the Harlingen USPS prior to 1987, relevant to multiple unjustified firing of employees, with multiple reinstatements due to frivolous allegations against them, in prior pleadings/briefs.  Plaintiff would show that apparently defendant Martinez had a vote of confidence for her managerial performance, which is consistent with the 1974 USPS standard of the 56 day instant-upper mobility plan that warrants incentives for defendant Martinez, in the amounts of: Thirty Seven Hundred Forty Six ($3,746) Dollars Px-0030, above average Px-0029 for year 1998, and Thirty One Hundred Thirty Three ($3,133) Dollars Px-0032, above average Px-0031 for year 1999, for her actions and performance, in prior pleadings/briefs, noting the following examples, which are incorporated by reference the same as if fully copied and set forth at length herein discussed in prior pleadings/briefs incorporated by reference the same as if fully copied and set length herein.

Plaintiff would show that the ongoing remanded grievance No. 90-M1221, filed 12-21-90, and because the remedy was substantial, and defendant Martinez caused unnecessary delays, that compelled plaintiff again, for a deferral of step 3 remand adjudication on 8-14-91 (Px109), and document/information request for 90-M1221 was incorporated with the 4-2-91/4-13-91 grievance investigation and denial of production requests, that prompted plaintiff to file an unfair labor practice charge for failure to

24

.

CVisPDF - www.fxeits.com

bargain against the USPS defendants, and thereafter defendants initiated a continuous pattern of intimidation and hostility against him, in prior pleadings/briefs. Plaintiff would show several good-faith verbal step 1 grievances and production requests, extension of time limits were agreed upon by the parties; management failed to comply, step 1 grievances were filed on 4-2-91 and management's 5-day time limit to respond expired, Union's Exhibit (UX) 5 and 6 in plaintiff's NLRB packet herein; thereafter, plaintiff resorted to file NLRB Case 16-CA-15043(P) charge on 4-8-91, against USPS for failure to bargain; thereafter, additional step 1 grievances UX- 7 & 8, were filed; again additional extensions were filed, and now involving 204-B's PX'(s)-7, 8, 9, 10, 11, 12, 13, & 14. Plaintiff would show that on 5/21/91 UX-1, defendant Galvan approved but did not grant discovery; thereafter, on 6-4-91 NLRB agent Armendariz telephonically called plaintiff at Harlingen USPS inquiring about discovery request progress, plaintiff referred the call to defendant's Galvan and Martinez stating that they would review and advise and on 6-5-91 discovery was granted Px-0033; by letter dated 6-6-91 to NLRB agent Armendariz, plaintiff withdraws NLRB charge against USPS Px-0033; incorporated by reference the same as if fully copied and set forth at length herein.

<u>APWU - NALC Local Memorandum of Understanding (LMOU) Negotiations</u>

Plaintiff would show example excerpts of locally negotiated USPS/APWU Local LMOU's CBA process with defendant Martinez predecessors, and with defendant Martinez in 1987 without hostility, until after the October 1991-1994 LMOU negotiations, defendant Martinez became hostile and disavowed the LMOU's Px-0040, as follows:

11-14-78 negotiated: Article VII.C Overtime (OT) for Window/Distribution Sections, and continued in effect through 1991;

25

Article IX.F Parking for APWU representative continued in effect through 1990;

10-30-87: for (1987 – 1990) Article VII.E OT, in effect through 1991; Article IX.B.6. Parking for APWU representative in effect through 1990;

10-30-91 USPS draft proposal by defendant Martinez, (incomplete begins at page 2) dated 10-30-87, Article IX. refused APWU representative parking;; APWU draft proposal by plaintiff, Article IX.B.6 included parking for APWU representative, defendant Martinez refused to sign; **NOTING** that National Association of Letter Carriers (NALC) Article X.A.2 continued to have NALC representative parking as in past practice.

Plaintiff would show that defendant Martinez, time after time capriciously made efforts to disavow plaintiff's negotiated rotating days-off work days for clerks with fixed days off, plaintiff's intention was family oriented to give the membership an opportunity to be with their families at least every two weeks; defendant Martinez capriciously wanted fixed days off for all clerks Px-0041.

November 30, 1982: ranked position (#7), DW & Vehicle Operations Maintenance Assistant (VOMA), was posted for bids Px-0044; thereafter, as a result of the bidding process plaintiff was awarded position #7 (Px-22) in prior pleadings/briefs incorporated by reference the same as if fully copied and set forth at length herein.

Reduction In Force (RIF) Px-21B, and, b) plaintiff's 20-plus years age-based tenure as an aggressive union officer's noninterference with defendant Martinez double standard, of employee favoritism, an excellent plan to circumvent Article 6, of the CBA with reference to "NO LAYOFFS OR RIF's"; and an excellent combination-mix make up, of a RIF and an age-based discrimination result (ELM 354.23), in prior pleadings/briefs. Plaintiff would show the double-standard treatment of employee favoritism/discrimination by defendant Martinez, and most notably as follow;

CVisPDF - www.foxlw.com

Plaintiff would show disparity of treatment in favor defendant Perez against plainfiff by defendant Martinez and other supervisors/co-conspirators that resulted in defendant Perez being susceptible to be recruited into the conspiracy to server as a non-management accuser see Px-0038, showing that during that critical time that defendant Perez had a window accountability shortage that management was reluctant to pursue, and was discovered by APWU in the discovery process of other grievance(s} filed by plaintiff in August of 1992, seeking related disparity of treatment information, revealing said treatment favored defendant Perez; on information and belief FTR widow clerk Baldemar Ramirez had incurred an estimated excessive shortage, and also on information and belief the shortage was never grieved or arbitrated, however, also on information and belief FTR clerk then-Edna Cortez had a substantial dormant window credit overage that was applied to Ramirez, still leaving a substantial shortage on Ramirez original shortage, quoting USPS Financial Handbook F-1, part 131 which states:

> When an accountable financial loss occurs and evidence shows the postmaster conscientiously enforced USPS policies and procedures... the Postal Service grants relief for the full amount of the loss.  When evidence fails to show the postmaster met those conditions, the Postal Service charges the postmaster with the full amount of the loss.

incorporated by reference the same as if fully copied and set forth at length herein.

Plaintiff would show that the defendants ignored their own policy and procedure for requesting legal representation for their own egregious and libelous conduct, citing the ELM Chapter 6, sub part 667.221, that states:

> To request legal representation by the Department of Justice, the employee must **promptly** submit, through channels, a written request for Representation.  Failure to do so may prevent the processing necessary to Obtain approval.

27

Plaintiff would show that he filed Civil Action B-95-150 on September 6, 1995, and the defective certification of defendants Romeo Rocha, Roberto Pantoja, Gilbert G. Galvan, Arturo J. Cortez, Eddie M. Perez, Louis Bazaldua, Manuel D. Hernandez, Felix R. Figueroa and George Lopez, was executed on February 23, 1999; or approximately forty one (41) months later with adequate advanced notice by plaintiff, and an opportunity for the Attorney General to investigate plaintiff's continuous allegations of defendants' libelous misconduct; and the same could be said about the defendants telephonic allegations of plaintiff's alleged misconduct investigation, if one was ever conducted, by the USPS and the EEOC, without a scintilla of evidence, as alleged by the defendants. Noting: that the Attorney General declined to certify defendant Mary Martinez, as acting within the course and scope of official capacity, in her United States Postal Service employment, and her nondiscretionary tortuous conduct against plaintiff, spanning from April of 1988 to the present, discussed in prior pleadings/briefs.

WHEREFORE, PREMISES CONSIDERED, FRANCISCO R. RODRIGUEZ plaintiff prays that the Magistrate reverse its decision and overrule the Postal Service motions to dismiss awarding plaintiff his partial summary judgment, back pay, front pay overtime pay, in addition to further proceedings on his other causes of action/remedies for discrimination, and grant any other and further relief to which appellant may be justly entitled.

Respectfully submitted,

DAVID E. FAST: by F.R.R.
with Counsel permission
TBA #068450500
11217, Leopard Street, Suite E

Corpus Christi, TX 784
(361) 241-4495
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above supplement to Plaintiff's third amendment and added responses/brief to Defendants was delivered to opposing party's attorney of record, by FAX, hand delivery or by certified mail – return receipt requested, by depositing in a mail depository of the U.S. Postal Service in a wrapper properly addressed, postage prepaid, to the said attorney on *18TH* day of ~~May~~ *Sept Zee* 2000.

## CERTIFICATE OF CONSULTATION

This is to certify that on *18TH* day of ~~May~~ *Sept Zee* 2000, I attempted to telephone opposing counsel, without any resolution of the matters raised in Plaintiff's added responses/brief to his supplement to third amendment on Defendants motions to dismiss.

*David E Fast*

DAVID E. FAST: by F.R.R
with Counsel permission

29

UNITED STATES DISTRICT COURT
SOUTJERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| FRANCISCO R. RODRIGUEZ | § | |
| Plaintiff, | § | |
| | § | Cause No. B-95-150 |
| VS. | § | Civil |
| | § | |
| UNUITED STATES POSTAL SERVICE, | § | |
| ET AL | § | |
| Defendants. | § | |

## ORDER

On the _____ day of _____, 2000, came on to be heard Plaintiff's added

Supplemental Responses and Brief to his Third Amendment to Defendant's Motions to

Dismiss, and it appearing to the Court, appropriate notice and opportunity has been given

to defendants;

IT IS THEREFORE HEREBY ORDERED and the case be continued on to the

Court's docket.

SIGNED this _____ day of _____, 2000.


_____

JUDGE PRESIDING

30