*113*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAY 1 4 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| FRANCISCO R. RODRIGUEZ, | § | |
| Plaintiff | § | |
| | § | Cause No. B-95-150 |
| VS. | § | Civil |
| | § | |
| UNITED STATES POSTAL SERVICE-ET AL | § | |
| Defendants. | § | |

TO THE HONORABLE MAGISTRATE JUDGE JOHN W. BLACK:   COMES NOW,

FRANCISCO R. RODRIGUEZ, plaintiff in the above-numbered and entitled cause, and

for his memorandum of law/brief on joinder/impleading the American Postal Workers

Union, AFL-CIO ("APWU") as a plaintiff herein, and in support therefor would

respectfully show the Court as follows:

## PLAINTIFF COMPLAINT OF UNFAIR AND DISPARATE TREATMENT

I. Plaintiff's Preliminary Response to The Court's Denial of His Motion to
Joinder/Implead APWU

A.  In 1968 plaintiff was elected secretary-treasurer of Local 2421 of the United

Federation of Postal Clerks ("UFPC"), thereafter, in 1969 he was elected vice president

of UFPC Harlingen local 2421, and remained in said position until the Reorganization

Act of 1970 (PRA), which divested the U.S. Post Office Department from the cabinet of

the President, and became the U.S Postal Service a quasi-governmental entity under the

jurisdiction of Congress and Postal Board of Governors.  With the enactment of the PRA,

1

several postal unions merged and the American Postal Workers Union, AFL-CIO

(APWU) emerged and became the bargaining agent for several of post office crafts, and

in part were the special delivery messengers, the maintenance, custodial and the clerk

force, of which plaintiff was elected General President of the APWU Harlingen local

representing the membership of those respective crafts and also the APWU local

bargaining agent, chief spokesperson-negotiator negotiating local issues in the Local

Memorandum of Understanding (LMOU), pursuant to Article 30 of the collective

bargaining agreement (CBA), for the consecutive LMOU's since the inception of the

PRA (1982 example attached), until his LMOU negotiated in October of 1991 before his

retirement in 1992, which defendant Martinez refused to reduce it to writing.  Thereafter,

plaintiff filed a grievance and an unfair labor practice charge against defendant Martinez

and the defendant-USPS for refusing to negotiate, pursuant to the National Labor

Relation Act ("NLRA") and jurisdiction over the National Labor Relations Board

("NLRB"), which grievance was deferred by the NLRB, and appealed to arbitration.

B.  Plaintiff would cite the following examples of grievances/arbitration/pre-arbitration

decisions, and his correspondence with the body of the National APWU, regarding his

involvement in the protection and welfare of the Harlingen local APWU membership in

the Court's file, incorporating by reference the same as if fully copied and set forth at

length herein, by showing that the real party in interest is the APWU:

     1.  11-13-73: -- Px-71J –Letter from Thomas A. Neill, National Vice President, clerk craft, to plaintiff regarding the USPS non-compliance of two full-time clerk craft positions;

     2.  8-29-74: - – Px-20  Step 3 grievance settlement regarding posting of three clerk craft positions, and involving defendant Martinez' reassinment to Weslaco post office;

3. 3-12-76: Px-71K - Letter from Irving A. Domingue, APWU Clerk Craft Regional representative to Gilbert Reyes, San Antonio USPS , re: plaintiff's complaint of USPS non-compliance of bargaining unit work by supervisors;

4. 8-29-80: Px-71K1 – Letter from Reyes, San Antonio USPS to Thomas A. Neill, APWU National Vice President, re: management (Mgt) non-compliance with bargaining unit (BU) work decisions;        Px-60   —  Px-61

5. 7-28-82: Px-39 — LMOU plaintiff proposal of rotating days-off workweeks resulted in impasse at negotiations, and appealed to impasse arbitration, USPS agreed and settled on plaintiff's proposal and was withdrawn from arbitration;

6. 5-23-90 -- Px-52 – re: mgt BU work, grievance denied to local union president Frank Rodriguez on step2 grievance summary, by defendant Martinez, which resulted in a class action step 3 settlement awarding the APWU Harlingen local 24 hours of overtime (OT) for the clerk craft;

7. 7-24-90 – Px-53  - re: mgt (204B) BU work, denied to union official Francisco Rodriguez, by defendant Martinez on step 2 grievance summary, which resulted in OT paid to local union;

8. 7-24-90 -- Px-54 – re: mgt BU work, denied to union official Francisco Rodriguez, by defendant Martinez, which resulted in OT paid to local union;

9. 7-30-90: r Px-122 -- re: removal of Harlingen window clerk Amanda Torres, by defendants Martinez, Bazaldua, Rocha;

10. 5-8-91: Px-0033 -- Plaintiff filed NLRB charge against defendant Martinez and USPS for failure to bargain effectively with the local APWU regarding denial of grievance information/documentation;

11. 5-6-91 --- Px-109 grievance remand from step 4, to step 2, regarding full-time maximization of full-time regular clerks.

12. 10-1-91: Px-60 -- re: class action pre-arbitration decision regarding two custodians compensated for a total of 160 hours.

13. 10-1-91: Px-61 -- re: Harlingen APWU president Rodriguez , grievance on rtemoval of Amanda Torres, successful in getting $2,507.00 refund from USPS;

14. 4-28-92: Px-71I – re: letter from Thomas Neill, National APWU, Harlingen APWU General President Francisco Rodriguez, re: flawed arbitration decision on Harlingen window clerk Amanda Torres Px-61;

C. Proceedings of Case Sub Judice

CWPDF - www.fwino.com

1. Plaintiff takes notice that a final pretrial hearing was set for April 26, 2001, (Docket No. 109), for which plaintiff was prepared to argue his position, regarding a prior Motion for Leave of the Court for Belatedly Joinder/Impleading the APWU as a plaintiff herein, and being unable to appear with his attorney David E. Fast, plaintiff FAXED him an affidavit (copy attached) prior to said hearing, and also plaintiff takes notice, and is terribly disappointed that the hearing (Docket No. 110) was cancelled unilaterally by the Court, by which plaintiff was denied the opportunity to voice his argument on the joinder, and respectfully complains, for his failure to see the fairness and equal treatment he is shown by the Court in his lawsuit, especially due to the fact that the Court denied his motion for a court appointed counsel to represent him, from the commencement of this action, and now he is faulted by the Court for his inexperience and ignorance of the law, and in support therefor would show the Court as follows:

1., Plaintiff filed a motion for a Court appointed counsel to represent him, from the commencement of this action against the defendants in 1995, but the Court denied his motion; thereafter, he appealed to numerous sources in the legal community to litigate his lawsuit but was unsuccessful in retaining counsel, compelling him to pursue the instant pro se lawsuit herein, as an inexperienced novice entering the administration of justice and equity due process arena.

2. March 1997: the Court granted the defendants' Motion For Protective Order, barring plaintiff from the legal and due process right of discovery.

3. September 5, 2000: Government defense counsel Nancy L Masso filed an ambiguous motion for continuance, noting that it was not her emergency; the Court granted the continuance.

4

4. October 30, 2000: government motion to admit *Pro Hac Vice Counsel* Philip W. Eglsaer to practice (Docket No. 99) against plaintiff: Two (2) key critical operative words "attorney" and "participate". Plaintiff directs the Court's attention by showing that counselor Egsaler is an employee/agent of the defendant-USPS, and a defendant himself domiciled at the defendant-USPS Regional office, Memphis, TN, with the jurisdictional authority over the Harlingen USPS, and the possessor of all of plaintiff's EEO's/grievances, by such examples as, Px-68Q, Px-71Q1 and Px-84B, and with the information/documentation necessary for plaintiff to litigate his lawsuit, but has been continuously denied him by the defendants for over a decade, and now counselor Eglsaer is taking a front seat to infiltrate and sabotage plaintiff's lawsuit, <u>utilizing his legal skills,</u> and of which evidence the Court has denied plaintiff; and government defense counsel Masso is to <u>participate, "in what plaintiff has asserted, in his removal grievance and throughout this lawsuit, as a conspiracy and defendant cover-up for their wrongdoing and misdeed",</u> because of her legal education and skills which plaintiff is laacking, and now the Court permits such conspiracy and cover-up to flourish and go forward in this case. Plaintiff would show that Mr. Eglsaer, with his legal skills has produced a belated-portion Px-0020 through Px-0025, evidence of material fact, long-time sought by plaintiff since 1992, at the depositions of defendants Martinez and Cortez, and such evidence is sufficient for plaintiff to show the defendants' egregious wrongdoing and misdeed, which implicates Mr. Eglsaer as an individual-defendant/coconspirator in this action.

5. Plaintiff directs the Court's attention to the filing of this action in September of 1995, by showing that the government positioned its defense for the defendants herein, without availing itself of the circumstances, actions and inaction of the defendants (ELM

5

667.222(a)(b), and 667.23, wherein 3-1/2 years later the government local Assistant U.S. Attorney filed an "untimely and outrageous" motion to represent the defendants; and granted by the Court; thereafter, approximately 4-1/2 years thence, by Order of the Court, without a fair judicial review, dismissed plaintiff's numerous claims *inter alia* the dismissal of him claims against all of the individual defendants, and the inference drawn that the defendants committed no wrong, and plaintiff the wrongdoer?  Unlike the defendants, plaintiff's golden opportunity to show otherwise has been short-circuited by the denial of the APWU joinder being the real party in interest, to bring forth the version of the defendants' circumstances, of the adverse actions and inaction against plaintiff for being the local union president for many years, and a productive USPS employee as well.

6.  Plaintiff has asserted throughout his grievance/EEO complaints, and the instant lawsuit, that the adverse actions against him by the defendants, were all in retaliation for his age-based long time protected activity representing the Harlingen local membership of the American Postal Workers Union, AFL-CIO (APWU) as an agent/officer of said APWU organization.

7.  Plaintiff wholeheartedly and respectfully understand the Court's dilemma of this case being the oldest in the Docket in this Division, but also pleads to the Court's understanding that plaintiff has been deprived peace-of-mind, enjoyment of a lomg-time planned retirement, on the verge of bankruptcy, and stressed-out by the defendants for the past 15 years, including litigating this action and by no imagination fun or enjoyment of life.

8.  Plaintiff's response to the Court's query as to why he had not sought relief at an earlier date is misplaced, by the simple fact that the defendants have continuously

denied him and the Court (please see item #2 above) information/documentation

necessary to prove his case and going on assumptions, and an apparent different standard

of proving a case in Federal Court. Plaintiff would show that through his APWU

training and education in the grievance-arbitration process, to prove an allegation it is

well settled that you have proof and evidence beyond a reasonable doubt. Plaintiff would

show that with the belated-partial evidence of material fact, produced by defendant and

operative Eglsaer, of which has sufficient probative and irrefutable evidence

supplemented by plaintiff's pleadings/briefs in the Court's file to show the defendants'

egregious wrongdoing and misconduct, and go forward with his lawsuit, incorporated by

reference the same as if fully copied and set forth at length herein.

10.  Plaintiff would show that through his unrelenting and legal-research

inexperience, found caselaw that would confer jurisdiction over the APWU for a joinder

as a plaintiff in this case.

## II.  PLAINTIFF'S MEMORANDUM OF LAW/BRIEF ON JOINDER/IMPLEADING THE AMERICAN POSTAL WORKERS UNION AS A PLAINTIFF

### A. CASES WHERE A.P.W.U. HAD STANDING TO REPRESENT UNION MEMBERS AND UNION PRESIDENTS, IMPLICITLY OR EXPLICITLY.

(DISCLAIMER: PLAINTIFF'S CASES ON A.P.W.U. BEING THE REAL PARTY IN INTEREST, ARE MOSTLY CASES EXCLUSIVELY ON REVIEW OF ARBITRATION AWARDS, WHEREAS OUR CASE IS A COMBINATION OF GRIEVANCE-ARBITRATION ACTIONS, THAT PLAINTIFF IS ARGUING ARE SUBJECT TO THE CASELAW ON ARBITRATION AWARDS.)

1.  U.S.P.S. V. A.P.W.U., 204 F.3d 523 (4th Cir. 2000); begins the first paragraph of

the decision by quoting from the provisions of the 1994 national collective bargaining

agreement ("National Agreement" and also "CBA"):

"Article 15 of the National Agreement prescribes a grievance-arbitration

procedure for the resolution of **any dispute** between the parties 'related to **wages, hours, and conditions of employment**.'" (Emphasis by DEF) 204 F.3d at 525.

Plaintiff suggests that the dissent by Judge King may be of some help in recognizing the representative status of APWU in our case as well as that case. While that case involved the termination of a "probationary" employee, it does illustrate the fact that APWU filed the grievance on behalf of its union member; a fact that apparently has been so far clouded in our case, that when Rodriguez filed the grievance on his removal, it was filed by Cindy Martinez, McAllen APWU local president, representing an APWU local president, on behalf of Rodriguez, despite Rodriguez being the aggrieved party as well, thus the real party in interest in our case should always have been APWU. Plaintiff also notes that USPS was accused in that case of disregarding its own procedures (ELM), similarly also disregarding its own procedures (ELM), in our case.

  2. <u>A.P.W.U., AFL-CIO v. Runyon</u>, 185 F.3d 832 (7th Cir.1999); is cited by plaintiff, despite involving "interest arbitration" instead of "grievance arbitration" (which is the apparent main thrust of our case), because plaintiff's complaint concerning defendants included continuing discrimination and retaliation against him in his capacity as A.P.W.U. local president, that also involved the local memorandum of understanding (LMOU), being that he was the local collective bargaining agreement (CBA) bargaining agent under the provisions of Article 30 of the CBA, chief spokesperson and negotiator between the USPS and the local union for <u>all</u> the local memorandum of understanding (LMOU) since the inception of the PRA of 1970. Plaintiff admits that none of the outrageous manipulative machinations by Postmaster Martinez on LMOU's ever reached the impasse-arbitration award stage, but easily could have and should have, but for the eventual retreat by the local USPS from having a final

and binding arbitration award in the local APWU's favor.  Plaintiff believes that the

LMOU grievances by plaintiff as APWU local president, should be reviewed because of

Martinez' discrimination between local unions, favoring the National Association of

Letter Carriers, AFL-CIO (NALC), and the retaliation against the APWU, that are so

analogous to the facts of this case, and because many of them came so close to being

arbitrated under remand by the NLRB, as well as the CBA between APWU and USPS.

The extreme variation in the numerous avenues of remedy are perceived as a pernicious

and insidious conspiracy against the APWU, moreso than against the plaintiff as an

individual, and continue to demonstrate that the real party in interest is the APWU, local

and national.

    3.   A.P.W.U. v. U.S.P.S., 861 F.2d 211 (9th Cir. 1988); was primarily

concerned with whether a local APWU union could obtain judicial review of an

arbitration decision, without written permission from the national APWU body, while not

our case, although the 9th Circuit reached the conclusion that the local union could obtain

judicial review without requiring written authorization from the national body.  Actually,

upon review of the grievance-arbitration measures taken after the plaintiff's removal, it

appears that Rodriguez as APWU local President was acting in official APWU capacity

in both grievances and arbitration actions.  Plaintiff calls the Court's attention to fn 1 on

page 214-215, reading in pertinent part:

> "The **USPS insists** that only the National Union and the USPS are   parties to the
> arbitration and that **neither an individual employee nor a local union** may seek
> to vacate an award." (Emphasis by DEF) 861 F.2d at 214-215.

noting the 9th Circuits curious position that individuals have the right to sue for **breach**

**of contract** (not our case)under the Postal Reorganization Act (PRA), 39 U.S.C. Sec.

1208(b), despite the **language of the statute**, which limits the **statutory right to labor**

**organizations**. Plaintiff notes the analogy of the statutory authority to bring suit under

PRA to the authority to sue under the Labor Management Relations Act (LMRA), 29

U.S.C. Sec. 185(a), with the 9th Circuit observing that the language of PRA tracks that of

the LMRA, and therefore, "interpretations of the LMRA are helpful in construing the

PRA." The 9th Circuit refers to the Federal Arbitration Act (FAA), 9 U.S.C. Secs. 1-14

being applicable to judicial review of arbitration of labor disputes (See fn 2 on p. 215,

citing caselaw that appears to exclude "contracts of employment of...any class of workers

engaged in...interstate commerce," from FAA coverage, and citing San Diego Co. Dist.

Coun. v. Cory, 685 F.2d 1137 (9th Cir. 1982) on FAA,

> "...this language suggests that Congress did not mean
> the USAA[FAA] to be used to review arbitration awards
> involving **collective bargaining agreements**." 685 F.2d
> at 1141 (Emphasis by DEF)

The 9th Circuit having decided the case in APWU's favor because the local union had

been a party to the arbitration procedure (now obvious to plaintiff in our case), noted in

fn 2, in further dicta:

> "Nevertheless, we believe cases discussing who is a party to arbitration for
> purposes  of the Arbitration Act are instructive in our analysis of **whether the
> local Union was a  party to arbitration** in this case." 861 F.2d at 215 (Emphasis
> by DEF)

which explains why the 9th Circuit reached a different result in the APWU case than,

Local 13, I.L.W.U. v. Pacific Maritime Ass'n., 441 F.2d 1061 (9th Cir. 1971), cert. den'd.

404 U.S. 1016 (1972) (because the ILWU stopped 2 steps short of the arbitration

process), but the APWU local union was involved to the last step in both grievance on

removal and arbitration on back pay, in our case.

4.   <u>A.P.W.U. v. U.S.P.S.</u>, 830 F.2d 294 (D.C.Cir. 1987), involved employee Gordon who was a steward & member of APWU at Royal Oak, Mich. Post Office, and who edited the locals monthly newslettter, who received a notice of removal for something in his newsletter, alleged to have violated Sec. 115 of DMM and 661 of ELM for engaging in conduct prejudicial to USPS. Gordon and APWU filed a grievance, that was denied; APWU then sought arbitration, upholding the grievance denial.  Gordon and both local and national APWU filed suit in district court, alleging discharge not for just cause and violation of CBA, and constitutional violation of free speech, with mixed rulings on summary judgments by the parties, but resulting in an order to reinstate Gordon with full back pay, for violating his free speech rights.  Court of Appeals affirmed but with no remand, as district had done, for appropriate sanctions.  This case cites <u>Pickering v. B.O.E.</u>, 391 U.S. 563 (1968) on protection of free speech.  The District Court decision is at <u>APWU v. USPS</u>, 598 F.Supp. 564 (D.D.C. 1984).  Plaintiff argues that fn33 on p. 312 is very instructive on receiving full back pay:

> "Part 436.11 of ELM of the Postal Service provides that '[a]n employee or former employee is entitled to receive back pay for the period during which an unjustified or unwarranted personnel action was in effect which terminated or reduced the basic compensation....which the employee normally would have earned during the period.'
> USPS ELM Sec. 436.11(1983).  The Postal Service has not suggested either in its brief or in oral argument that an award of back pay would be barred by the doctrine of sovereign immunity. [Citation omitted]" sue and be sued" provision of 39 U.S.C. Sec. 401(1) constitutes a broad waiver of sovereign immunity with respect to the Postal Service.  There is also no question that this action was properly brought in the District Court under 39 U.S.C. Sec. 409(a), which provides, with one exception not relevant here, that 'the U.S. District courts shall have original but not exclusive jurisdiction over all actions brought by or against the Postal Service.' [citation omitted] 'while employees of most federal agencies must resort to the Court of Claims to recover back pay in amounts of over $10,000, the district courts have jurisdiction over all back pay claims of Postal Service employees under 39 U.S.C. Sec. 409(a)' [citations omitted]" 830 F.2d at 312-3.

11

5.   A.P.W.U., AFL-CIO v. U.S.P.S., 766 F.2d 715 (2nd Cir.1985); involved the
A.P.W.U. obtaining an injunction against USPS enjoining defendant from preliminarily
discharging the local APWU president, pending arbitration, where that Court of Appeals
focused on the proposed dismissal for engaging in union-related activities (same as our
case, plaintiff has never done anything more than his union-related duties as local
president); holding that the district court had jurisdiction to issue the preliminary
injunction, but APWU failed to demonstrate the existence of conditions necessary for the
issuance of a preliminary injunction, so reversed the case on the basis that a preliminary
injunction was not required to aid the arbitration process?

Plaintiff points out that despite the USPS making the advance notice of proposed
removal against that president, the APWU local pursued 3 courses: 1) unfair labor
practice charge with the National Labor Relations Board (signed by the president); 2)
filed a grievance on the president's behalf in accordance with the CBA; and 3) while 2)
was in step 2 of a 4-step grievance-arbitration process, filed a complaint in district court
seeking declaratory and injunctive relief.  USPS did not complain in that case about the
APWU being the real party in interest, or for acting on behalf of its local president.
Plaintiff also notes that Court found that the district court and NLRB had concurrent
jurisdiction over suits to enforce labor contracts, even if the conduct involved might
entail an unfair labor practice.

B. Plaintiff cites further caselaw whereby the real party in interest is the APWU

1. A.P.W.U. v. U.S.P.S., 940 F.2d 704 (D.C.Cir 1991)

2. A.P.W.U. v. U.S.P.S., 827 F.Supp. 836 (D.D.C. 1993)

3. A.P.W.U. v. U.S.P.S., 52 F.3d 359 (D.D.C. Cir. 1995)

12

3. <u>A.P.W.U. v. U.S.P.S.</u>, 52 F.3d 359 (D.D.C. Cir. 1995)

4. <u>A.P.W.U. v. U.S.P.S.</u>, 871 F.Supp. 556 (6th Cir. 1989)

5. <u>Fraternal Order of (Postal) Police v. U.S.P.S.</u>, 988 F.Supp. 701 (S.D.N.Y. 1997).

WHEREFORE-PREMISES CONSIDERED, FRANCISCO R. RODRIGUEZ

plaintiff, prays the Court grant his motion for leave of the Court to belatedly join/implead

the American Postal Workers Union as a plaintiff, and that the Court may grant any other

and further relief to which plaintiff may be justly entitled.

Dated:  5/11/01.

                              Respectfully submitted,

                              DAVID E. FAST
                              TBA #068450500, S.D. Adm. #2129
                              11217 Leopard St., #"G"
                              Corpus Christi, Tx 78410
                              361/241-4495
                              Attorney for Plaintiff

### CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the Motion for Leave of the Court for Joinder, was delivered to the opposing attorney, by FAX, hand delivery or certified mail, return receipt requested, by depositing same as addressed, postage prepaid, to the said attorney, on May __11__, 2001.

                              DAVID E. FAST

### CERTIFICATE OF CONSULTATION

This is to certify that on the _11_ day of May, 2001, I consulted by telephone with the office of Nancy Masso, to inquire if the USPS/defendants had opposition to plaintiff's motion for leave of the Court for joinder of APWU, without obtaining permission or opposition.

                              DAVID E. FAST

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

FRANCISCO R. RODRIGUEZ,          §
                     Plaintiff   §
                                 §   Cause No. B-95-150
          VS.                    §   Civil
                                 §
                                 §
UNITED STATES POSTAL SERVICE-ET AL,  §
                     Defendants  §

On the _____ day of _____, 2001, came on to be heard Plaintiff's Motion for

Leave of the Court to join/implead the A.P.W.U., and if appears appropriate notice has

been given to all interested parties/defendants and after opportunity for a hearing if

necessary, or requested;

IT IS THEREFORE HEREBY ORDERED that Debtor's Motion for Leave of the

Court to join/implead the A.P.W.U., is granted, and plaintiff is directed to implead the

APWU at his earliest convenience.

SIGNED this _____ day of _____, 2001.


_____
JUDGE PRESIDING

14

STATE OF TEXAS            §
COUNTY OF CAMERON         §

I, FRANCISCO R. RODRIGUEZ, am sixty eight (68) years of age, and worked for the
U.S. Postal Service ("USPS") as a postal clerk for approximately twenty seven (27)
years, and concurrently represented the membership of the American Postal Workers
Union, AFL-CIO ("APWU"), Harlingen Local, for well over twenty (20) years. I retired
from the USPS on October 2, 1992, but after retirement I continued to represent the
APWU local membership, for well over one year.

Four (4) years prior to my retirement I was harassed, intimidated and retaliated against by
then and now present local USPS management in hopes that I would quit my job, because
of my APWU union ("Union") activities. After I did not succumb to their anti-union
tactics, management suspended me on 3-20-92, and thereafter, I was constructively
discharged effective 5-15-92. That action by management against me was overturned by
a 7-9-92 settlement, of a " return to duty with full back pay decision". I did not receive
the back pay, and my belief was that the USPS had made an error in my back pay
calculations, but in effect, intentionally misled me into believing I was fully compensated
for the suspension period. I pursued this wrong done against me through proper
administrative procedures, but the USPS adamantly refused to pay me.

Thereafter, inexperienced and not knowledgeable of the legal system, I filed a pro se
legal action, Cause B-95-150, against the USPS provided to me under the U.S.
Constitution. However my effort in this endeavor has been hindered by unfortunate
health problems; the recent replacement of my heart pacemaker on late March, 2001, a
viral infection; and most recently, a fall on the bath tub, injuring my left-lower rib cage.

In my most recent legal research, I belatedly discovered that this is a golden opportunity
for me to be properly represented by APWU becoming involved, because this is not an
individual, but a Union issue. I am in communication with the APWU National Union
Headquarters in Washington, DC for a joinder in my cause of action.

Subscribed and Sworn before me            /s/ _____
this 26th day of April, 2001 at            FRANCISCO R. RODRIGUEZ
Harlingen, Texas                           Date            Time
/s/ _Mary Ann Taylor_                      Harlingen, Texas

My commission expires _Sept 18_ , _2004_

MARY ANN TAYLOR
NOTARY PUBLIC
STATE OF TEXAS
My Commission Expires 09-18-2004

\*\*\*\*\*\*\*\*\*\*\*\*\* -IND. XMT JOURNAL- \*\*\*\*\*\*\*\*\*\*\*\* DATE 04-26-2001 \*\*\*\*\*\* TIME 09:15AM \*\*\*\*\*\*

```
JOURNAL No.      = 29

DATE/TIME        = 04-26-2001 09:12AM

DURATION         = 00:00'48

COMM.RESULT      =   OK

PAGE(S)          =   001

MODE             = TRANSMISSION

DESTINATION      = 13612411143

RECEIVED ID      = 3612411143

RESOLUTION       = STD
```

-DOSH OFFICE SUPPLY HGN.  -

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*( FAX-200   V2.17)\* -       956 428 0067- \*\*\*\*\*\*\*\*\*\*

- 1 -

## MEMORANDA OF UNDERSTANDING

I.   Vacation (Annual Leave) Article X

II.   Holidays (Article XI, Also Local No. X)

III.   Assignment of Sick and Injured (Article XIII)

IV.   Posting (Article XXXVII)

V.   Labor-Management Meetings (Article XXXI)

VI.   Curtailment of Operations (Article XXX)

VII.   Overtime Desired List (Article VIII)

VIII.   Wash-up Time (Article VIII, Section 9)

IX.   Parking (Article XX)

X.   Post Office Sections (Articles X, XI & VII)

Case 1:95-cv-00150   Document 113   Filed in TXSD on 05/14/2001   Page 18 of 28

## MEMORANDA OF UNDERSTANDING

I. Vacation (Annual Leave)   Article X

    A. The Harlingen Local, American Postal Workers Union, shall furnish the United States Postal Service, Harlingen, TX 78550, a proposed vacation schedule for the annual leave year on/or before February first each calendar year.

    B. Vacation awards will be in order of seniority.

    C. Prime annual leave time for the APWU crafts will be the last two (2) weeks of March through November each year. Two (2) clerks will be off during prime time with the exceptions of the middle two (2) week periods of the months of April, May, June, July, and August when three (3) may be on leave. Part-time flexible clerks will be included in the vacation plan. Window and mail distribution sections will alternate April through August middle two (2) week periods on a yearly basis.

    D. For annual leave purposes the basic work week will start on Sunday and run through the following Saturday.

    E. Union will prepare proposed annual leave schedule for APWU and present the proposed schedule to the employer on/or before February 1 of each calendar year. An approved annual leave request, PS Form 3971, will be returned to the individuals. Remainder of annual leave in excess of 240 hours must be scheduled before March 1 or the employer will schedule it.

    F. An employee called for Jury Duty during approved prime time will be rescheduled for the same number of days at a later date.

    G. Annual leave periods during State and National American Postal Workers Union Conventions will be blocked off for delegates. This applies to prime time if the conclave should fall during this period.

    H. It is mutually agreed that during prime time annual leave time management determines any additional non-scheduled leave time will be posted by annual leave schedule. Senior applicant will be granted this special time.

    I. Cancelled leave will be posted for bid only to clerks junior to the clerk relinquishing leave. Cancellation of leave must be made at least fifteen (15) days prior to starting day of leave period.

    J. If notice of leave cancellation on PS Form 3971 is not made 15 days prior to the starting day of leave period, the leave cannot be cancelled.

CSAPDF - www.fesiso.com

- 3 -

## MEMORANDA OF UNDERSTANDING

### I. Vacation (Continued)

K. Any emergency alteration of annual leave periods will be accomplished by sonsultation between union and management.

### II. Holidays (Article XI, also Local No. X)

A. Method of Selecting Employees to Work on a Holiday

1. After scheduling part-time flexibles to maximum extent, full-time regulars shall be scheduled on a volunteer rotating basis by seniority and on mandatory rotation by juniority.

.2. By Section. (See Local Article No. X)

### III. Assignment of Sick and Injured (Article XIII)

A. Light duty is duty which can be performed without creating a hazard to the employee himself or to other employees.

B. The organizations (crafts) party to this agreement will establish a committee to assist the affected employee and to consult and work with management for the gainful utilization of the affected employee's abilities and skills. Every effort will be made to retain the employee in his own craft before crossing craft lines.

### IV. Posting (XXXVII)

A. Change of duties requiring posting:

1. Addition or subtraction of a scheme.

2. Being assigned or unassigned a fixed credit and/or window duty on a regular basis.

3. A change of more than 50% of the assigned duties of a position will require the position to be re-posted.

4. A member of APWU shall be present for bid openings for all posted craft positions.

<u>MEMORANDA OF UNDERSTANDING</u>

V. <u>Labor-Management Meetings (Article XXXI)</u>

    A. Labor-Management meetings will be held at the request of either party. Time and place of the meeting will be determined at the time of request.

    B. Items to appear on the agenda of the called meeting will be presented 72 hours in advance of the meeting date.

VI. <u>Curtailment of Operations</u> <u>(Article XXX)</u>

    A. Guidelines for the curtailment or termination of postal operations because of emergency conditions:

        1. Consultation with union representatives will be held at earliest possible time.

        2. Employer will furnish union with a copy of office Natural Disaster Plan.

VII. <u>Overtime Desired List (Article VIII)</u>

    A. Overtime desired lists will be posted by sections:

        1. Distribution.

        2. Window.

        3. Maintenance.

    B. An employee (clerk craft) who is promoted to full-time regular may, at the time of his promotion, add his name to the overtime desired list. The employee must enter his name on the overtime desired list within 14 calendar days from the effective date of his promotion.

    C. For overtime purposes the boxing of mail will be considered a combination of both Distribution and Window Section duties.

VIII. <u>Wash-up Time</u>

    A. Wash-up time will be granted employees when needed in accordance with Article XXX, Section B. 1., 1978 National Agreement.

- 5 -

## MEMORANDA OF UNDERSTANDING

IX. Parking (Article XX)

    A.  1.  Parking spaces above the requirements of the Postal Service will be properly marked and available to employees on a first come basis. Authorized parking will be available during hours between 0930 and 1430 hours daily. After Rural Carriers have departed for the day, their spaces may be used.

        2.  Employees parked between 0930 and 1430 WHO ARE REQUIRED TO WORK BEYOND 1430 HOURS will be authorized to leave vehicle parked as is or move it to another unobstructed space by supervisor.

        3.  Parking spaces authorized for use in

          (1)  Above will be properly identified.

    B.  U. S. Postal Service parking lot spaces shall be clearly marked.

    C.  Management spaces will be properly marked.

    D.  Postal employee's vehicles shall be properly identified.

    E.  (1)  Parking spaces in USPS Employee Parking Lot shall be on a first come basis.

        (2)  Spaces will be properly marked.

    F.  One parking space for an APWU representative shall be set aside on the post office maneuver area in accordance with the needs of the service.

X.  Post Office Sections  (Articles X, XI & VII)

    A.  The Harlingen, TX 78550 Post Office Clerk and Maintenance Crafts will be established by sections for the purpose of Overtime Desired List, Vacation Scheduling and Holiday assignments as follows:

        1.  Customer Services (Regular Assigned Clerks)

        2.  Mail Processing

        3.  Maintenance Section

\*    \*    \*    \*    \*

# MEMORANDA OF UNDERSTANDING

This MEMORANDA OF UNDERSTANDING, entered into on November 29, 1978*,
at Arlingen, TX 78550, between the representative of the United
States Postal Service and the designated agent of the American Postal
Workers Union, AFL-CIO, pursuant to the local implementation pro-
visions of the 1978 National Agreement.

*Negotiations on this Local Memoranda of Understanding were
completed before November 14, 1978.


R. E. M. Gilbert
Postmaster
Harlingen, TX 78550


Francisco Rodriguez, General
President, American Postal
Workers Union, AFL-CIO,
(Clerk and Maintenance Crafts)
Harlingen, Texas 78550

CBR 89-05              AIRS NO.:  5539
COURT DECISION

APWU v. USPS
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
DATE OF AWARD:  MARCH 29, 1989

CAPSULE SUMMARY

Enforcement of an arbitration award granting a postal clerk
back pay is ordered by the U.S. District Court for the
Eastern District of New York. A postal clerk's local brought
suit to confirm an award setting aside his removal and
awarding him pay less earnings received during the time he
was out of work. The Postal Service reinstated the clerk but
refused him back pay despite an initial calculation of hours
for which he was to receive payment. Three months after the
clerk signed the USPS's wage computation, he was notified
that he was not entitled to back wages because he made no
efforts to obtain other employment while he was out of work.

The USPS unsuccessfully moved to dismiss the clerk's suit on
the basis that the employee's local lacked standing to obtain
enforcement of the arbitration award. This defect was
remedied by granting the local union's motion to amend to
substitute the national union as a party. The Postal
Service's other procedural argument, that the union's action
was barred by applicable statutes limiting the time within
which suit could be brought, was also rejected. Appropriate
statutes provide for a one year limitation period and also
permit an additional six months when a new action is
dismissed without prejudice and is timely commenced again.
Since the original action was filed within the one-year
period and a new action was commenced six months from the
time the proper party was substituted for the original
plaintiff, the court concluded that the action was timely.

Addressing the merits, the Postal Service maintained that the
arbitration award was unenforceable because back pay had not
been calculated in accordance with provisions in Section 436
of the Employee and Labor Relations Manual. The federal
court refused to accept this argument. At the arbitration
hearing, the clerk testified that he attempted to obtain
other employment and the Postal Service failed to offer a
rebuttal on the issue of mitigation, the court observed.

Therefore, the arbitrator awarded back pay after hearing the
necessary evidence. To require the union to present a
separate grievance on the issue of back pay would thus
disturb the initial decision and interfere with the "final
and binding" nature of arbitrations, the court held. The
court then enforced the arbitrator's award but remanded the
case for a precise calculation of back pay due and owing to
the postal clerk.

TEXT OF AWARD

I.

Case 1:95-cv-00150   Document 113   Filed in TXSD on 05/14/2001   Page 24 of 28

CBR 89-05                AIRS NO.:   5539
COURT DECISION

APWU v. USPS
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
DATE OF AWARD:  MARCH 29, 1989

CAPSULE SUMMARY

Enforcement of an arbitration award granting a postal clerk
back pay is ordered by the U.S.  District Court for the
Eastern District of New York.  A postal clerk's local brought
suit to confirm an award setting aside his removal and
awarding him pay less earnings received during the time he
was out of work.  The Postal Service reinstated the clerk but
refused him back pay despite an initial calculation of hours
for which he was to receive payment.  Three months after the
clerk signed the USPS's wage computation, he was notified
that he was not entitled to back wages because he made no
efforts to obtain other employment while he was out of work.

The USPS unsuccessfully moved to dismiss the clerk's suit on
the basis that the employee's local lacked standing to obtain
enforcement of the arbitration award.  This defect was
remedied by granting the local union's motion to amend to
substitute the national union as a party.  The Postal
Service's other procedural argument, that the union's action
was barred by applicable statutes limiting the time within
which suit could be brought, was also rejected.  Appropriate
statutes provide for a one year limitation period and also
permit an additional six months when a new action is
dismissed without prejudice and is timely commenced again.
Since the original action was filed within the one-year
period and a new action was commenced six months from the
time the proper party was substituted for the original
plaintiff, the court concluded that the action was timely.

Addressing the merits, the Postal Service maintained that the
arbitration award was unenforceable because back pay had not
been calculated in accordance with provisions in Section 436
of the Employee and Labor Relations Manual.  The federal
court refused to accept this argument.  At the arbitration
hearing, the clerk testified that he attempted to obtain
other employment and the Postal Service failed to offer a
rebuttal on the issue of mitigation, the court observed.

Therefore, the arbitrator awarded back pay after hearing the
necessary evidence.  To require the union to present a
separate grievance on the issue of back pay would thus
disturb the initial decision and interfere with the "final
and binding" nature of arbitrations, the court held.  The
court then enforced the arbitrator's award but remanded the
case for a precise calculation of back pay due and owing to
the postal clerk.

TEXT OF AWARD

I.

II.

Section 15(b) of the Act provides in pertinent part that "[s]uits for violation of contracts between the Postal Service and a labor organization representing Postal employees . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy." This provision is virtually identical to Section 301(a) of the Labor Management Relations Act, 29 U.S.C. Section 185(a) (1982) (Section 301(a)), which confers on federal district courts jurisdiction over suits for violation of labor contracts generally. Accordingly, both sections have been interpreted uniformly. See, e.g., Miles v. United States Postal Service, 561 F.2d 1348, 1350 (9th Cir. 1977).

Generally, under Sections 15(b) and 301(a) unions have the exclusive right to pursue grievances where a collective bargaining agreement establishes a mandatory, binding grievance procedure. See, e.g., McNair v. United States Postal Service, 768 F.2d 730, 735 (5th Cir. 1985).

Numerous courts have held, however, that local unions not signatories to collective bargaining agreements have no standing to enforce agreements under those sections. See, e.g., Baton Rouge Building and Construction Trades Council AFL-CIO v. Jacobs Construction Inc., 804 F.2d 879, 882 (5th Cir. 1986); U.S. Dist. LEXIS 3819, Pittsburgh Metro Area Postal Workers Union v. United States Postal Service, 463 F. Supp. 54 (W.D. Pa. 1978), aff'd, 609 F.2d 503 (3rd Cir. 1979), cert. denied, 454 U.S. 950 (1980).

The Brooklyn Local is apparently not a signatory to the National Agreement and moves under Federal Rule of Civil Procedure 15 to amend the complaint to substitute the National Union as plaintiff in this action. Its counsel submits an affidavit which states that Moe Biller, president of the National Union, and James Musumeci, president of the Brooklyn Local, have agreed to the substitution. The Postal Service has not submitted any papers in opposition.

The court grants the Brooklyn Local's motion to amend the complaint and concludes that the substituted plaintiff, the National Union, has authority to bring this action.

III.

A.

The Postal Service argues that plaintiff's action is barred by the statute of limitations.

Because the Act does not contain a limitations period applicable to suits brought under Section 1208(b), the court must borrow one from elsewhere.

In determining an appropriate limitations period, federal courts generally apply the most closely analogous statute of limitations under state law. See DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 158-59 (1983);

Case 1:95-cv-00150   Document 113   Filed in TXSD on 05/14/2001   Page 26 of 28

<u>International Union</u> v. <u>Hoosier Cardinal Corp.</u>, 383 U.S. 696, 703-04 (1966).

However, where a state limitations period would be an "unsatisfactory vehicle for the enforcement of federal law," courts apply the most analogous federal law. <u>DelCostello</u>, <u>supra</u>, at 161-62. In the <u>DelCostello</u> case, for example, the Supreme Court held that a 90-day state statute of limitations to vacate an arbitration award failed to provide an aggrieved employee with a satisfactory opportunity to vindicate his rights in a "hybrid" Section 301/unfair representation action. <u>Id</u>. at 166. Instead, the court borrowed a six-month limitations period applicable to the filing of unfair labor practice claims under Section 10(b) of the National Labor Relations Act, 29 U.S.C. Section 160(b) (1982).

Plaintiff here has neither filed a "hybrid" action nor seeks to vacate an arbitration as in the <u>DelCostello</u> case; rather it seeks to enforce an arbitration award brought only under Section 15(b). Although the Second Circuit has not ruled directly on the issue, the First Circuit has applied a state statute of limitations in an action to confirm an arbitration award because "a relatively lengthy period for actions to confirm does not threaten the finality of arbitral awards" and is not contrary to federal policy. <u>Derwin</u> v. <u>General Dynamics Corp.</u>, 719 F.2d 484, 490 (1st Cir. 1983); <u>see also</u> <u>International Assoc. of Heat & Frost Insulators</u> v. <u>Insulation Quality Enterprises, Ltd.</u>, 675 F. Supp. 1398, 1403-04 (E.D.N.Y. 1988).

The court concludes that it is appropriate to apply the New York state statute of limitations applicable to actions to confirm arbitral awards. That statute provides that "[t]he court shall confirm an [arbitration] award upon application of a party made within one-year after its delivery to him. . . ." See N.Y. Civ. Prac. L. & R. Section 7510 (McKinney's 1981).

In any event, the most closely analogous federal statute, the Federal Arbitration Act, also provides for a one year statute of limitations for actions to confirm an arbitration award. 9 U.S.C. Section 9 (1982).

B.

The Postal Service maintains that a one-year statute of limitations period bars plaintiff's suit because the arbitration award was rendered on July 2, 1986 and the National Union's complaint was filed on June 22, 1988.

Under New York statute of limitations law, however, if an action "is timely commenced" and is dismissed without prejudice, "a new action may be commenced upon the same transaction or occurrence . . . within six months [of] the termination provided that the new action would have been timely commenced at the time of commencement of the prior action." N.Y. Civ. Prac. L. & R. Section 205 (McKinney's 1981).

Rosenthal brought his original action in May 1987, well

within the one-year period allowed, and the Brooklyn Local brought the new action on June 22, 1988, within 6 months of the court's memorandum and order dismissing Rosenthal's complaint.

The court therefore decides that the action is timely.
IV.

A.

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of the moving party may be discharged by "'showing' . . . that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Although on summary judgment "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion," Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), that party may not rely on mere allegations or denial, but "must set forth specific facts" to show a genuine issue. Fed. R. Civ. P. 56(e).

B.

The issue before the arbitrator was

Was the grievant, Clerk Alan Rosenthal's Notice of Removal dated September 26, 1984, issued for just cause?

If not, what was the remedy?

After a hearing the arbitrator concluded that the Postal Service did not have just cause for removing Rosenthal and that he "shall be reinstated with back pay less earnings he may have received during the period of his removal and return to work."

Both parties agree that under Article 15.4(6) of the National Agreement all decisions of the arbitrator are final and binding. The National Union contends that because it presented mitigation evidence at the hearing the arbitrator's award of back pay is binding on the Postal Service. The Postal Service maintains, however, that although Rosenthal is entitled to back pay, the calculation of the amount of back pay due must be done in accordance with Section 436 of the Employee and Labor Relations Manual (the Manual).

Article 15.1 of the National Agreement defines a grievance as any dispute between the Union and the Postal Service related to "wages, hours, and conditions of employment." Nothing in that article limits the scope of a particular grievance. In this case the National Union and the Postal Service agreed to arbitrate both the issues of whether Rosenthal was removed without just cause and, if so, what the appropriate remedy should be.

Although Section 436 of the Manual provides a procedure for

determining whether back pay is due and, if so in what amount, it does not by its language require a separate grievance over the issue of back pay.

The National Union submits affidavits from counsel and Rosenthal stating that Rosenthal testified at the arbitration hearing that he made efforts to obtain other employment during the period of his removal. Although the Postal Service had an opportunity to present its own evidence or cross-examine Rosenthal on the issue of mitigation, it apparently did not. Having heard, and presumably considered, evidence of mitigation, the arbitrator awarded Rosenthal back pay.

Indeed, after the arbitration award was rendered in July 1986 the Postal Service sent Rosenthal a calculation of hours for which he deserved back pay. Rosenthal states in his affidavit that he signed and returned the computation of hours but attached a statement contesting the precise calculation because it did not include overtime hours.

The Postal Service submits the affidavit of Florane Sclar stating that it sent Rosenthal a letter on July 24, 1986 asking him to submit a written statement about his efforts to obtain other employment during the period of removal. Although Rosenthal maintains that he submitted the requested material and otherwise complied with "the requirements of Section 436 of the . . . Manual," the Postal Service's records do not contain any such information.

Nonetheless the National Union submits a calculation of hours which it suggests the Postal Service sent to Rosenthal in January 1987. Rosenthal states that he signed this computation, which included overtime hours, and returned it to the Postal Service. Three months later the Postal Service notified Rosenthal that it would not award back pay.

To require the National Union to re-exhaust the grievance and arbitration procedure under Section 436 of the Manual would conflict with Article 15 of the National Agreement which provides that the arbitrator's decision is final and binding. The Postal Service does not contend that the arbitral award was procedurally defective, nor does it dispute that the issue before the arbitrator included the question of Rosenthal's remedy if his removal was found to be without just cause.

Generally a labor arbitration award must be enforced if the arbitrator acts within his jurisdiction and his award draws "its essence from the parties' collective bargaining agreement." Northwest Airlines Inc. v. Air Line Pilots Assoc., 808 F.2d 76, 78 (D.C.Cir. 1987).

The court, therefore, enforces the arbitration award, including that portion which awards Rosenthal back pay "less earnings he may have received during the period between his removal and return to work." However, as the award does not provide a specific calculation of back pay due, the court decides it appropriate to remand the case to the arbitrator for that calculation. See, e.g., Locals 2222, 2320-2327, Int'l Brotherhood of Electrical Workers v. New England Tel. &