12

United States District Court
Southern District of Texas
FILED

AUG 03 2001

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

FRANCISCO R. RDRIGUEZ, )
        Plaintiff )
                           )  Cause No. B-95-150
VS. )  Civil
                           )
UNITED STATES POSTAL SERVICE ET AL.)
        Defendant )

## JOINT PRETRIAL ORDER

### I. - APPEARANCE OF COUNSEL

DAVID E. FAST
TBA #068450500, S.D. Adm. #2129
11217 Leopard St., Ste. "G"
Corpus Christi, Tx 78410
361/241-4495
361/241-1143 (Fax)
Attorney for Plaintiff/Francisco R. Rodriguez

NANCY MASSO
Asst. U. S. Attorney
TBA #00800490, S.D. Adm. #10263
600 E. Harrison, Ste. 201
Brownsville, Tx 78520
956/548-2554
956/548-2549 (Fax)
Attorney for Defendants

PHILIP EGALSAER, USPS Atty.
Special Asst. U. S. Atty.
Fed. I.D. #18569
225 North humphreys Blvd.
Memphis, Tn 38166
901/747-7351
901/747-7351 (Fax)
Attorney for U.S.P.S.

### II. - STATEMENT OF THE CASE

Plaintiff was employed in April, 1966, at the Harlingen Post Office, in the clerk-craft, and he retired on October 2, 1992, having worked more than 26 years. He also was President of the American Postal Worker's Union (APWU) for more than 20 years. Mary Martinez was employed in 1974, and was appointed Postmaster of the Harlingen Post Office in 1987. After becoming Postmaster, Mary Martinez rekindled an old adversarial relationship with plaintiff, out of which plaintiff alleges discrimination because of his sex and age, and retaliation or reprisal for his activities as A.P.W.U. local union President,

in violation of Title VII of the Civil Rights Act of 1991 and the A.D.E.A. With a number of USPS grievances and E.E.O.C. proceedings, arising out of the adversarial relationship, overlapping, but with unsatisfactory resolution according to plaintiff, he filed this lawsuit in September, 1995. There were at least 3 disciplinary actions taken by Postmaster Martinez, a Letter of Warning in 1988; a Seven-Day Suspension in 1991, but served in 1992; and an Emergency Suspension followed by a Letter of Removal in March, 1992, but effective May 14, 1992. The President of the McAllen A.P.W.U. challenged the removal by U.S.P.S. grievance, pursuant to the National Col- Collective Bargaining Agreement, that resulted in plaintiff being returned to work with full back pay under a Step 3 decision. The U.S.P.S. calculated the back pay with the Postal Data Center in Minnesota issuing payment(s) to plaintiff that he contends was too small. Some of the grievances and EEOC proceedings continued up until 1995, plaintiff remained as President of the local A.P.W.U. until 1993. ~~Plaintiff and defendants disagree over whether his retirement was voluntary or not~~. Plaintiff had a heart attack in late 1991, after which he filed for worker's compensation with O.W.C.P. during March, 1992. He also suffered a heart attack in 1994. (law against age discrimination) noting that this cause of action was filed at or during the pendency of a series of E.E.O.C. actions and U.S.P.S. grievances filed by the APWU on behalf of plaintiff, that reflected a continuous adversarial attitude and activity against plaintiff by U.S.P.S. management and defendants at the Harlingen Post Office and upper

regional/district management of the U.S.P.S. in South Texas. Because of the **continuous** nature of the discrimination and retaliation against plaintiff, plaintiff maintains that he sufficiently exhausted any administrative remedies and that his petition in September, 1995 was timely. The specific instances of discrimination are wrongful disciplinary actions taken against plaintiff because of his active representation of the A.P.W.U. employee-members and for having taken APWU action against Mary Martinez receiving favorable treatment in 1974, which is not only discrimination against him for his age and gender, but also is retaliation for his legitimate APWU actions and exemplary work record with USPS since 1966. There are back pay, emotional distress & other torts as well.

### III. - JURISDICTION

This Court has jurisdiction under Federal Question based on plaintiff's allegation of defendant's discrimination against him in violation of 42 U.S.C. Sec. 2000e and A.D.E.A. (age discrimination statute).

### IV. - PENDING MOTIONS/PLEADINGS

Plaintiff's pending motions:

1. Reurging of his motion for joinder/impleader of American Postal Worker's Union (APWU) because of his capacity as President of the local APWU during 1988 to 1992.

2. Motions and briefs seeking to set aside the Court's order granting defendants' partial summary judgment, denying plaintiff's tort claims and dismissing all individual defendants but the USPS and Mary Martinez, pending.

3. Recent briefs supplementing and partially amending the Third Amended Complaint, along with motions for leave of the Court, to allow plaintiff's briefs to become part of the record.

4. Plaintiff has challenged the certifications by the U.S. Attorney General's Office as to the dismissed individual defendants as having been acting in the course and scope of their employment, with the certifications coming 41 months after the lawsuit was filed and plaintiff was complaining that there had been no certifications filed by the U. S. Attorney General.

Defendant's pending motions:

1. Defendant has made an oral objection to plaintiff's most recent supplemental brief that partially amends his Third Amended Complaint.

2. Defendants continue to object to plaintiff's assertion of a criminal cause of action and torts for not complying with the Federal Tort Claims Act.

## V. - CONTENTIONS OF THE PARTIES

Plaintiff alleges discrimination by defendant USPS, and its personnel, when plaintiff was acting in his official capacity as local A.P.W.U. President, a position that he held for more than 20 years, and as a USPS employee in the Harlingen, Texas Post Office (to a lesser extent), also back pay.

Defendant denies that there was any discrimination against this plaintiff in his employment with the U.S.P.S. under either Title VII or the ADEA. Defendants submit that any actions taken with regard to the plaintiff and his employment were reasonable and necessary under the circumstances and were not taken as a result of any discriminatory or retaliatory motive. Defendants also contend that the alleged breach of contract claim fails on a legal and factual basis.

Defendants contend the Court has jurisdiction to hear only those claims of sex and age discrimination related to his 1992 removal and return to duty. Defendants contend the Court does not have jurisdiction to hear plaintiff's claims of retaliation for union activity. Finally, defendants con-

tend that plaintiff's retirement was voluntary.

## VI. - ADMISSIONS OF FACT

The parties admit that plaintiff Francisco R. Rodriguez, was employed by the U.S.P.S. from April, 1966, until he retired on October 2, 1992.

## VII. - CONTESTED ISSUES OF FACT

Plaintiff contends that:

1. Any activity between the parties occurred at the Harlingen, Texas Post Office, except for alleged miscommunications between USPS management involving Corpus Christi MSC San Antonio District Office, Memphis Regional Office, Minnesota P.D.C., etc.

2. Defendant is an employer, as defined by Title VII (Civil Rights Act, as amended) with more than 300 employees, defendant is also a semi-governmental agency under the Postal Reorganization Act of 1970.

3. All of the conduct affecting this case by U.S.P.S. personnel, was made in the course and scope of their employment with defendant, except where shown to be outside the limits of conduct as specified by the National Bargaining Agreement (also known as, the C.B.A.) and USPS manuals and procedures.

4. Plaintiff as a Hispanic citizen of the United States was about age 60 when the alleged discrimination occurred, and is male, adverse to Mary Martinez, being female, and is a member of a protected class as local President of the APWU. Plaintiff was the subject of defendants' retaliation for his conduct and activity in representing his APWU members in work disputes with Harlingen and USPS management.

5. Plaintiff as a long-term member of the clerk-craft since 1966, and President of the local APWU union for more than 20 years, was very well qualified for the work he performed as an employee, and in representing his APWU members.

6. Plaintiff was the subject of unjustified disciplinary actions by defendants out of discrimination against him for his age and sex, and in retaliation for his representation of his APWU members, that resulted in health problems and financial damage to him and his family, and eventually resulted in early retirement.

Plaintiff's issues of contention are:

1. Did defendant's personnel discriminate against the plaintiff in unilaterally taking away his VOMA duties, with higher pay?

2. Did defendant's personnel discriminate against the plaintiff in making the 7-day suspension, that was not justified (that was later overturned in plaintiff's subsequent grievances/EEOC complaints), but was also used by defendants to begin a systematic attack on plaintiff's financial standing with his creditors and his economic well-being?

3. Did plaintiff show qualified for his clerk-craft and VOMA duties, as well as well-qualified to represent the APWU in labor-management relations and disputes involving local APWU members, including himself?

4. Was the disparate treatment on age and sex against plaintiff, if any, intentional by defendants' personnel?

5. Was the disparate treatment in the Emergency Suspension and Removal Action in March-May, 1992, based on the plaintiff's age and gender, against plaintiff, if any, intentional by defendants' personnel?

6. Was the disparate treatment on age and sex against plaintiff in the Seven-Day Suspension, if any, retaliation by defendants' personnel?

7. Was the disparate treatment in the Emergency Suspension and Removal Action in March-May, 1992, against plaintiff if any, retaliation by defendants' personnel?

8. Was being removed from USPS employment and then being reinstated, an "adverse" employment action by defendants, with USPS claiming that adverse employment actions could only

include discharge, demotion, refusal to promote or suspension?

9. Was plaintiff damaged by being suspended/removed from his employment, as part of defendants' discrimination and harassment of plaintiff, as local APWU President, despite his qualifications for employment with defendant and for being the president of a local union?

10. What errors, if any, did defendants make with regard to plaintiff's pay in 1992, and what additional money is the plaintiff owed as part of his back pay/front pay, as a result of the positive result of the Step 3 USPS grievance?

11. Were the errors in Number 10., intentional and did any of the defendants intend that plaintiff and his family would suffer financially, and other ways, as a result of the problems with his pay, compounded by refusal and delay in not paying him all of his back pay/front pay.

Defendants' contested issues of fact are:

1. Whether the Postal Service properly computed and paid to plaintiff, the back pay awarded by the arbitrator, following his return to work.

2. Whether postal officials were motivated by discriminatory animus in their computation and payment of plaintiff's back pay.

3. Whether postal managers forced plaintiff to retire or whether plaintiff voluntarily chose to retire.

4. Whether postal managers were motivated by retaliatory or age bias in their treatment of plaintiff or was plaintiff's treatment explained by other non-discriminatory reasons.

5. Whether plaintiff suffered physical, mental and/or emotional injury as a result of his treatment by postal managers.

6. Defendants contend many of the facts asserted by

plaintiff are irrelevant, immaterial and therefore, inadmissible.

## VIII. - AGREED PROPOSITIONS OF LAW

1. A plaintiff asserting discriminatory termination claim under Title VII must first make a prima facie case by showing that (1) he was a member of a protected class, (2) that he was qualified for the job or would have been qualified for the achievement or position, (3) there was an adverse job action unjustified by situation, and (4) the adverse action was because of his age or gender.

2. Once a plaintiff has made out a prima facie case of employment discrimination, the burden of production (but not the ultimate burden of persuasion, which remains throughout with the plaintiff) shifts to the defendants. Defendants must articulate, but need not prove, a legitimate, nondiscriminatory reason for the adverse employment action taken against the plaintiff. If the defendant succeeds, the burden of production shifts back to the plaintiff to prove by a preponderance of the evidence and with a "heightened level of specificity" that the proffered reason is mere pretext and the employer's actual intent was discriminatory. Mere disbelief of the employer's proffered reason for its action is not enough, there must be proof of intentional discrimination. A plaintiff's subjective belief that he was discriminated against because of age/sex-without more-is insufficient to establish a prima facie case.

3. A Title VII plaintiff cannot succeed by proving only that the defendants' proffered reason for an adverse person-

nel decision is pretextual, but only by showing both that the reason was false and that age/sex discrimination was the real reason.

## IX. - CONTESTED ISSUES OF LAW

Plaintiff's Contested Issues of Law are:

1. Plaintiff is entitled to Title VII relief if he establishes by a preponderance of the evidence that his age/sex was a motivating factor in the Defendant's allegedly discriminatory employment practices resulting in disciplinary detriment/alteration of the terms and conditions of employment; St Mary's; Burdine; McDonnell-Douglas, U. S. Supreme Court; Vought, 5th Circuit (citations omitted).

2. Plaintiff challenges the issue of alleged failure to exhaust administrative remedies in EEOC proceedings and USPS grievances, since the discrimination/harassment/retaliation was continuous from 1988 until plaintiff was forced to retire in October 2, 1992 (noting also that the EEOC proceedings and USPS grievances extended beyond the date of retirement.

3. Plaintiff would show that defendants retaliated against him because of his conduct/activity as local A.P.W.U. President had resulted in numerous adverse employment decisions against U.S.P.S. management, with defendants concocting fictitious grounds of misconduct and disciplinary problems against plaintiff as multiple pretexts to remove him from his position as local APWU President, noting that from 1966 to 1988, when the harassment began, plaintiff had a pristine disciplinary and attendance record at the local USPS installation. The retaliation was particularly reprehensible because it extended beyond the local worksite, into upper USPS management.

4. Plaintiff also challenges defendants' position that he had received all of his back pay, as ordered by the Step 3 USPS grievance of 7/9/92, with the contested issue being how the back pay (and "front pay") should have been calculated with plaintiff alleging defendants misused the Form 2240's to deprive him of his earned pay and benefits, as well as improperly adjusting his pay, pre-removal and post-removal, in order to intentionally do plaintiff financial harm, as well the other damages and harm inflicted on plaintiff.

5. Plaintiff also challenges defendants' position that he is required to prove that defendant USPS, as employer either knew or should have known of any misconduct by its personnel with regard to plaintiff (be put on not ce) and failed to take prompt remedial action, if any.

6. Plaintiff challenges defendants' claim that he is re-

stricted to damages only for lost wages, since there are many foreseeable damages/injuries intended by defendants, flowing from defendants' discrimination/retaliation/harassment and manipulation of his pay and benefits.

7. For the same reason plaintiff challenges defendants' legal theory that mitigation of damages, is restricted to mitigation of lost wages, since there are other damages besides lost wages, over which plaintiff had no control once defendants prematurely eliminated his allotments for payments for long term financial obligations.

8. Plaintiff points out that he still seeks damages for infliction of emotional distress and anxiety, and defamation to his character.

Defendants' Contested Issues of Law are:

1. Whether plaintiff has standing to prosecute his claims for alleged breach of the pretrial bargaining agreement.

2. Whether the union breached its duty of fair representation with respect to the matters, which plaintiff seeks to assert his claims of breach of the Collective Bargaining Agreement.

3. Whether plaintiff timely filed his civil action which asserted claims of breach of the Collective Bargaining Agreement.

4. Whether the Court has jurisdiction over plaintiff's claim of breach of the Collective Bargaining Agreement.

5. Whether plaintiff properly exhausted his administrative remedies with respect to his claims for breach of the Collective Bargaining Agreement.

6. Except with respect to the single incident involving the computation and payment of back pay implementing the grievance settlement returning him to work, whether plaintiff properly exhausted his administrative remedies with respect to his claims of sex and age discrimination.

7. Except with respect to the single incident involving the computation and payment of back pay implementing the grievance settlement returning him to work, whether plaintiff timely filed his civil action with respect to his claims of sex and age discrimination.

8. Whether the Court has jurisdiction over any of plaintiff's claims of prohibited discrimination, except his claims of sex and age discrimination as it relates to the single incident involving the computation and payment of back pay implementing the grievance settlement returning him to work.

9. Whether this Court has jurisdiction over plaintiff's claims of retaliation or reprisal for union activity.

10. Whether plaintiff's apparently voluntary retirement was really a constructive discharge.

## X. - EXHIBITS

Plaintiff has prepared a list of exhibits, attached.

Defendants' Exhibit List will be filed by August 21, 2001

## XI. - WITNESSES

Plaintiff has prepared a list of witnesses, attached.

Defendants' Witness List is attached.

## XII. - SETTLEMENT

Mediation was attempted without success.

## XIII. - TRIAL

The parties disagree on the length of time required for a jury trial of this cause. Defendants believe trial will last 4 days. Defendant requests at least 3 days notice of any trial schedule changes because of witnesses coming from outside of the Rio Grande Valley area.

## XIV. - ATTACHMENTS

Plaintiff attaches his proposed voire dire questions and jury charge; defendants attach their proposed voire dire questions and jury charge.

READ and APPROVED, the ____ day of August, 2001.

                                                  _____
                                                  JUDGE PRESIDING
                                                  Southern District of Texas