

United States District Court
Southern District of Texas
FILED

AUG 0 3 2001

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

FRANCISCO R. RODRIGUEZ,     )
            Plaintiff   )
                    )   Cause No. B-95-150
VS.                  )   Civil
                    )
UNITED STATES POSTAL SERVICE-ET AL,)
            Defendants)

## PLAINTIFF'S LIST OF VOIRE DIRE QUESTIONS

1. Did defendant's personnel discriminate against the plaintiff in unilaterally taking away his VOMA duties, with higher pay?

2. Did defendant's personnel discriminate against the plaintiff in making the 7-day suspension, that was not justified (that was later overturned in plaintiff's subsequent grievances/EEOC complaints), but was also used by defendants to begin a systematic attack on plaintiff's financial standing with his creditors and his economic well-being?

3. Did plaintiff show qualified for his clerk-craft and VOMA duties, as well as well-qualified to represent the APWU in labor-management relations and disputes involving local APWU members, including himself?

4. Was the disparate treatment on age and sex against plaintiff, if any, intentional by defendants' personnel?

5. Was the disparate treatment in the Emergency Suspension and Removal Action in March-May, 1992, based on the plaintiff's age and gender, against plaintiff, if any, intentional by defendants' personnel?

6. Was the disparate treatment on age and sex against

- 1 -

plaintiff in the Seven-Day Suspension, if any, retaliation by defendants' personnel?

7. Was the disparate treatment in the Emergency Suspension and Removal Action in March-May, 1992, against plaintiff if any, retaliation by defendants' personnel?

8. Was being removed from USPS employment and then being reinstated, an "adverse" employment action by defendants, with USPS claiming that adverse employment actions could only include discharge, demotion, refusal to promote or suspension?

9. Was plaintiff damaged by being suspended/removed from his employment, as part of defendants' discrimination and harassment of plaintiff, as local APWU President, despite his qualifications for employment with defendant and for being the president of a local union?

10. What errors, if any, did defendants make with regard to plaintiff's pay in 1992, and what additional money is the plaintiff owed as part of his back pay/front pay, as a result of the positive result of the Step 3 USPS grievance?

11. Were the errors in Number 10., intentional and did any of the defendants intend that plaintiff and his family would suffer financially, and other ways, as a resullt of the problems with his pay, compounded by refusal and delay in not paying him all of his back pay/front pay.

12. Did the U.S.P.S. or any of its employee defendants, retaliate against plaintiff, while acting in his capacity as President of the Harlingen A.P.W.U.?

-2-

13. What percentage of the total retaliation against plaintiff for acting in his capacity as President of the Harlingen A.P.W.U. by the defendants, do your find to be attributable to each of those found by you, in your answer to Question No. One, to have retaliated against plaintiff?

14. Was the retaliation by defendants within the course and scope of each defendant's employment with the U.S. Postal Service?

15. Do you find from the preponderance of the evidence that one or more of the defendants violated the civil rights of plaintiff Francisco R. Rodriguez?

16. What sum of money, if paid now in cash, would fairly and reasonably compensate plaintiff Francisco R. Rodriguez for his actual damages, if any, that resulted from the occurrence in question?

17. What sum of money, if any, should be assessed against one or more of the defendants and awarded to plaintiff Francisco R. Rodriguez as exemplary damages for their conduct.

18. What sum of money, if any, should be assessed against one or more of the defendants and awarded to plaintiff Francisco R. Rodriguez as damages for the violation of plaintiff Francisco R. Rodriguez' civil rights?

19. Do you find from the preponderance of the evidence that one or more of the defendants conspired with other defendants to inflict injury or harm on plaintiff Francisco R. Rodriguez during the time period covered by this lawsuit, from 1988 to 1992?

20.   What sum of money, if paid now in cash, would fairly and reasonably compensate plaintiff Francisco R. Rodriguez, for his harm/injuries, if any, that resulted from the occurrence of any conspiracy by more than one of the defendants?

21.   What sum of money, if any, should be assessed against one or more of the defendants and awarded to plaintiff Francisco R. Rodriguez, as exemplary damages for the conduct by defendants?

22.   Do you find from a preponderance of the evidence that one or more of the defendants illegally removed plaintiff, Francisco R. Rodriguez, from his Vehicle Operation and Maintenance Assistant (VOMA) duties, for which he was the successful bidder in 1983, and had remained as incumbent until unilateral removal at the Harlingen Post Office in early 1992 and gave the VOMA duties to another employee without bidding for the assignment?

23.   What sum of money, if paid now in cash, would fairly and reasonably compensate plaintiff Francisco R. Rodriguez, for his damages or harm/financial injuries, if any, that resulted from plaintiff Francisco R. Rodriguez being illegally removed from his VOMA duties as successful bidder and incumbent of that assignment?

24.   What sum of money, if any, should be assessed against the U.S. Postal Service and awarded to plaintiff Francisco R. Rodriguez, as back pay (including Overtime and Regular Pay illegally removed by defendants) and benefits (already earned and accruing during the time he was removed from employment)

-4-

resulting from the grievance restoring him to his normal em-
ployment on July 7, 1992?

25.  What sum of money, if any, should be assessed against
the U.S. Postal Service and awarded to plaintiff Francisco R.
Rodriguez, as front pay (including Overtime and Regular Pay)
and benefits (that would have accrued if plaintiff had not
been forced, albeit indirectly due to injury to his health,
into early retirement), accruing up to the time that plain-
tiff would have normally retired(noting he was in good health
prior to the onset of defendants' harassment/retaliation).

26.  Do you find from the preponderance of the evidence that
one or more of the defendants directly or indirectly prevent-
ed Restricted Delivery Registered Letter #R 563 404 954, from
being delivered to its addressee, Francisco R. Rodriguez, on
or about March 27, 1992, in violation of the U.S. Postal Ser-
vice regulations and the U.S. criminal statutes?

27.  What sum of money, if any, should be assessed against
the U.S. Postal Service and any one of the defendants and a-
warded to plaintiff Francisco R. Rodriguez, for the harm/
injury to him and his employment and his health, plus ex-
penses in his efforts to receive/retrieve said Restricted
Delivery Registered Letter, that was never delivered or ac-
counted for by the U.S. Postal Service and defendants, in
violations of the U.S. Postal Service regulations and the
U.S. criminal statutes?

        Dated:  August 2, 2001.

                        Respectfully submitted,

-5-

_DAVID E. FAST_
DAVID E. FAST
TBA #068450500, S.D. Adm. #2129
11217 Leopard St., #"G"
Corpus Christi, Tx 78410
361/241-4495
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of The Plaintiff's Questions for the Voire Dire, was delivered to the opposing attorney, by FAX, hand delivery or certified mail, return receipt requested, by depositing same in a depository of the U. S. Postal Service in a wrapper properly addressed, postage prepaid, to the said attorney, on Aug.2, 2001.

_David Fast_
DAVID E. FAST